[Crim. No. 1437. In Bank.—January 28, 1900.]

## THE PEOPLE, Respondent, v. CHARLES CARSON, Appellant.

CRIMINAL LAW.—LIFE SENTENCE—MALICIOUS ASSAULT WITH DEADLY WEAPON—DEATH PENALTY—CONSTITUTIONAL LAW.—Section 246 of the Penal Code, providing that "every person undergoing a life sentence in a state prison of this state, who, with malice aforethought, commits an assault upon the person of another with a deadly weapon or instrument, or by any means or force likely to produce great bodily injury, is punishable with death," is not violative of any provision of the federal or state constitution.

ID.—MOTION TO SET ASIDE INDICTMENT—RESUBMISSION AFTER DE-
MURRER SUSTAINED—QUALIFICATIONS OF GRAND JURORS—CASE AF-
FIRMED.—*Held,* on the authority of *People* v. *Quijada,* 154 Cal. 243,
[97 Pac. 689], that a motion to dismiss a new indictment, found by
another grand jury, after demurrer sustained to a former indictment,
and resubmission thereto under section 1008 of the Penal Code, be-
cause not found within thirty days after being held to answer, as
provided in section 1382 of the Penal Code, and also because one of
the grand jurors was discharged as a trial juror within one year
prior to his impanelment, and further because some of the grand
jurors were aliens,—all grounds being based upon a record exactly
similar to the record in that case,—was properly denied, as to each
ground assigned.

ID.—AUTHORITY FOR NEW INDICTMENT—EFFECT OF REMAND TO STATE'S
PRISON ON HABEAS CORPUS.—The authority for the new indictment
and its validity depend solely on the order resubmitting the charge
to a new grand jury, after demurrer sustained to the original, and
cannot be affected by the custody of the defendant; and an order
made upon *habeas corpus* more than thirty days after the order sus-
taining the demurrer, upon the petition of the defendant, remanding
him to the custody of the warden of the state prison, under the life
sentence, cannot have the effect to nullify or terminate the order of
court directing a new indictment to be filed.

ID.—GENERAL ASSAULT UPON PRISON OFFICERS—CONSPIRACY TO ESCAPE
—EVIDENCE—DECLARATIONS AND ACTS OF CO-CONSPIRATOR—ORDER
OF PROOF—DISCRETION.—Though the practice is not to be com-
mended of allowing the declarations and acts of a co-conspirator to
be admitted against the defendant, without first proving the con-
spiracy, yet the order of proof is in the discretion of the court, and
it is sufficient that the whole evidence appears to warrant the jury
in finding that there was a conspiracy among prisoners, including
the defendant, to effect an escape by a general and combined as-
sault upon the prison officers with deadly weapons.

ID.—USE OF BLACKSMITH'S CHISEL BY DEFENDANT, AND OF KNIVES BY
OTHERS—CONSPIRACY ADMISSIBLE TO SHOW INTENT OF ASSAULT.—
Although the indictment charges the use of a blacksmith's steel
chisel with long handle, as a deadly weapon by defendant, and
though it appears that other conspirators used knives, and although
the defendant can only be convicted of using the particular weapon
charged; yet the evidence showing the conspiracy to escape by the
use of deadly weapons in assaulting the prison officers, is not subject
to be stricken out on that ground, it being admissible to show the
intent with which the defendant, in furtherance thereof, made the
particular assault with the chisel charged against him in the indict-
ment.

ID.—LIMITATION OF EVIDENCE TO SHOW INTENT—RIGHT OF DEFENDANT.—
If the evidence of conspiracy was incompetent against the defendant

for any other purpose than to show such intent, the only right which the defendant had was to ask for an instruction to the jury limiting their consideration of such evidence to the question of the intent with which defendant made the particular assault charged against him, if they found such assault was made by him.

ID.—ADMISSION OF KNIVES IN EVIDENCE.—The proof being that many of the co-conspirators of defendant were armed with knives which were being actually used by them in making the assault on the prison officers, the knives left by them on the premises where they were found, when shots were fired at them, were admissible in evidence, (including one found near defendant, when he fell wounded, regardless of proof whether he had it in his possession or not) in connection with the evidence of all the circumstances attending the assault, and as bearing on the question of the conspiracy, and as evidence of the intent with which the general assault was made.

ID.—IMPEACHMENT OF DEFENDANT AS WITNESS—CONVICTION OF FELONIES.—When the defendant was produced as a witness in his own behalf, it was proper for the prosecution to ask him on cross-examination, how many times he had been convicted of a felony.

ID.—UNTENABLE THEORY THAT DEFENDANT WAS AIDER AND ABETTOR—WAIVER OF OBJECTION.—Although if the defendant had been accused generally of an assault with a deadly weapon, he might have been convicted by proof that he had aided and abetted the other prisoners in such an assault with such weapons, and would then have been in law a principal in the crime, even though he made no assault with a deadly weapon himself; yet such theory is untenable, when defendant is charged with the use of a specific deadly weapon, in which case he can only be convicted by proof of an assault made by him with the weapon charged, upon the person named. But though such untenable theory was urged by the prosecution, if no assignment of error is made relative thereto, either as to evidence admitted or instructions given, and no instruction was asked by defendant to eliminate the same from the consideration of the jury, such theory cannot be considered as ground for reversal.

ID.—INSTRUCTIONS—REQUESTS COVERED BY CHARGES.—It was not error to refuse requested instructions substantially contained in other instructions given by the court.

ID.—INSTRUCTIONS—CONSPIRACY TO ESCAPE—CRIME OF PRISONER NOT UNDER LIFE SENTENCE.—The court properly instructed the jury that it is a crime for a prisoner under sentence in a state prison for less than life to escape therefrom, and that if such prisoner conspired with other prisoners to escape from such prison all are engaged in the conspiracy to commit a crime. When there is evidence to which such instruction is applicable, it was proper to instruct the jury as to the criminality of an escape, as bearing on the intent with which defendant under life sentence, if found to be a party to the conspiracy, made the assault with which he was charged.

ID.—PROPER REFUSAL OF REQUEST AS TO LESS VERDICTS.—Under the Penal Code, authorizing prosecution of a person under life sentence in a state prison, for an assault with a deadly weapon with malice aforethought, and making a conviction subject to the penalty of death, the legislature could not have intended that the rules as to convictions of an ordinary assault with a deadly weapon should apply, and the court properly refused an instruction as to the possibility of less verdicts of conviction, under which no punishment could be inflicted.

ID.—FORMS OF VERDICT CONTEMPLATED—DEGREE OF PROOF—REASONABLE DOUBT AS TO ELEMENTS OF OFFENSE.— INSTRUCTIONS.—Under a reasonable construction of section 246 of the Penal Code, it is not contemplated that any verdicts should be returned in a prosecution under it, save either a verdict of guilty as charged, or a verdict of not guilty. The proof must measure up beyond a reasonable doubt to the exact charge as made, and must warrant the jury in finding all of the elements of the offense: 1. That defendant, at the time of the alleged assault was undergoing a life sentence in the state prison; 2. That he then, with malice aforethought made the assault upon the person named; and 3. That he made the same with a deadly weapon as charged; and it was proper for the court to instruct the jury that if they entertained a reasonable doubt as to any or all of these elements of the offense, they should return a verdict of not guilty.

APPEAL from a judgment of the Superior Court of Sacramento County and from an order denying a new trial. E. C. Hart, Judge.

The facts are stated in the opinion of the court.

Henry C. Ross, for Appellant.

U. S. Webb, Attorney-General, and J. Charles Jones, Deputy Attorney-General, for Respondent.

LORIGAN, J.—On December 29, 1904, a number of prisoners, including the defendant, incarcerated in the state prison at Folsom, were engaged at work at a rock crusher operated at the prison under charge of R. J. Murphy, captain of the guard, and C. H. Jolly, his lieutenant. A conspiracy had been entered into between some of these prisoners to attempt to escape, and about 3 o'clock of the day mentioned those involved in it simultaneously made an attack on Murphy and Jolly. Most of the prisoners were armed with rude knives fashioned surreptitiously out of iron or steel implements used

about the quarry. The attack on Murphy was led by a prisoner named Finley, who assaulted him with a knife, knocked him down, and stabbed him several times in the shoulder. He was then raised to his feet and Finley and another of the prisoners named Hill grasped him by either arm and with knives drawn, and aided and accompanied by others of the prisoners, including the defendant, proceeded to push Murphy in front of them across a bridge towards the railroad track by which they expected to escape. The defendant was close behind Murphy and as Finley and Hill pushed or dragged the latter along the defendant repeatedly struck him over the head with a blacksmith's chisel with which he was armed. At the time that Murphy was being attacked, another attack was being made on Jolly by Morales, Quijada, and other prisoners in the conspiracy. The attack on Jolly was likewise made with knives and he was overpowered and hurried toward the point where Murphy and his captors were attempting to cross the bridge. The obvious purpose of the prisoners in taking Murphy and Jolly with them after assaulting and overpowering them was the hope that the other guards would not fire on them for fear of injuring Murphy and Jolly. This hope was, however, delusive, because as the prisoners with Murphy and Jolly came in sight of the other prison guards, Jolly called on them to fire, which they did. Murphy and Jolly were both severely wounded, the prisoners Hill, Morales, and Quinlan killed, the other prisoners wounded and the escape frustrated. Defendant at the time the assault by his associates and himself was made upon Murphy was undergoing a life sentence in the state prison at Folsom.

It is provided by section 246 of the Penal Code that "every person undergoing a life sentence in a state prison of this state, who, with malice aforethought, commits an assault upon the person of another with a deadly weapon or instrument, or by any means or force likely to produce great bodily injury, is punishable with death."

The defendant was indicted under this section, tried, found guilty, and sentence of death imposed upon him. He appeals from the judgment and from an order denying his motion for a new trial.

No question is made upon this appeal as to the sufficiency of the evidence to sustain the verdict. It is insisted, however,

that the section of the code under which appellant was indicted and convicted is unconstitutional, and if not, that, nevertheless, the judgment must be reversed for the reason that the court erred in denying the motion of appellant to set aside the indictment returned against him, and erred also in its instructions to the jury and in its rulings as to testimony offered upon the trial.

As to the constitutional objections made by appellant to the code section on the ground that it is violative of certain provisions of the federal and state constitutions, they are no broader in their scope than those which were urged against this same section in the case of the *People* v. *Finley*, 153 Cal. 59, [94 Pac. 248], and *People* v. *Quijada*, 154 Cal. 243, [97 Pac. 689]. Finley was one of the "life termers" in Folsom with whom appellant participated in the assault upon Murphy, the captain of the prison guard, and Quijada, another "life termer," who at the same time made an assault upon Jolly. They were both prosecuted under this same section 246 of the Penal Code, convicted, and sentenced to death. They appealed, attacking, as appellant now does, the constitutionality of the section, and it was held that the section was not obnoxious to any constitutional provision, either federal or state. No additional grounds are presented by the present appellant which, in our judgment, disturb the correctness of that conclusion.

As to the other points urged for a reversal:—

An indictment had been presented against the appellant on April 11, 1905, attempting to charge him with the same offense of which he was subsequently convicted. A demurrer by appellant to that indictment was sustained on June 26, 1905, and an order made by the court directing that the case be submitted to another grand jury as provided in section 1008 of the Penal Code. On August 3, 1905, appellant sued out a writ of *habeas corpus* to obtain his discharge from the sheriff and to be remanded to the custody of the warden of the state prison at Folsom, which application on hearing was granted and an order made accordingly. On August 10, 1905, a grand jury other than the one which had presented the original indictment against defendant, returned another indictment against him charging him with the same offense attempted to be charged in the indictment of April 11, 1905.

This latter indictment is the one under which he was tried and found guilty, and was returned forty-five days after the order sustaining the demurrer and ordering the cause submitted to another grand jury was made.

One of the grounds of the motion to set aside the last indictment was that it had not been returned within thirty days after the order sustaining the demurrer to the first indictment was entered, the appellant insisting that the same principle of law (Pen. Code, sec. 1382),—namely, that an information must be filed against a defendant within thirty days after he is held to answer or the information must be dismissed, must be applied by legal analogy to an indictment, and that unless the indictment is returned within thirty days after demurrer sustained and order made submitting the cause to another grand jury, the indictment must be dismissed.

Another ground of the motion to dismiss the indictment was that one of the members of the grand jury which indicted the appellant was disqualified to act as such because he had been discharged as a trial juror within one year previous to his being impaneled as one of the grand jurors. (Code Civ. Proc., sec. 199, subd. 3.) Still another ground was that certain of the persons who acted as grand jurors and returned the indictment were aliens.

We simply mention these various grounds urged by appellant only to say that they were all presented exactly as they are presented now on a similar record in the case of the *People* v. *Quijada,* 154 Cal. 243, [97 Pac. 689], were fully considered and discussed in the opinion in that case, decided adversely to the contention of appellant, and nothing further need be said relative to them.

One point, however, is made now which does not appear to have been presented in the Quijada case. It is that the order discharging the defendant from the custody of the sheriff and remanding him to the custody of the warden at Folsom prison, made on the petition of appellant in the *habeas corpus* proceeding more than thirty days after the order sustaining the demurrer to the original indictment, nullified and terminated the effect of the order of court directing that a new indictment be filed in the matter. There is nothing in this claim. All that the order made on *habeas corpus* operated on was the custody of the defendant. The

validity of the indictment did not depend on whether the defendant was in the custody of the sheriff or the warden or in custody at all. It depended upon the order of resubmission, which the order on *habeas corpus* changing the custody of the defendant from the sheriff to the warden of the state prison, did not pretend to nor could effect.

This leaves for consideration only the questions as to the rulings of the court upon the admission of evidence and the action of the court upon the instructions.

As to the rulings of the court:—

While the prosecution was presenting evidence as to the conduct of the prisoners, other than the defendant, at the time the general assault was being made upon the officers of the prison the defendant objected to its introduction before evidence had been preliminarily introduced showing a conspiracy in which defendant was engaged. The court overruled the objection, admitted the evidence, and appellant assigns it as error. This is the only assignment of error made as to the admission of this evidence, and the point as made, is not well taken. The order of proof is within the discretion of the court, and while the practice is not to be commended of permitting testimony of the declarations and acts of an alleged conspirator before proof of the conspiracy is made, it is not error to do so. (*People* v. *Van Horn,* 119 Cal. 323, 330, [51 Pac. 538]; *People* v. *Donnolly,* 143 Cal. 394, 398, [77 Pac. 177].) There was sufficient evidence in the case to warrant the jury in finding that there was a conspiracy among the prisoners to effect an escape through an assault on the officers of the prison with deadly weapons and that the defendant was a party to it. For this reason the court also properly denied the motion of the defendant made at the conclusion of the evidence in chief for the people to strike out all evidence bearing on the question of conspiracy as insufficient to establish its existence. Nor was the evidence subject to a motion to strike it out on the ground that as defendant was charged in the indictment specifically with an assault on Murphy with a particularly designated deadly weapon—a chisel—that he could not be convicted by proof that an assault was made by the other prisoners on Murphy with knives, notwithstanding he was a party to the conspiracy with them to escape from prison by making an assault

with deadly weapons upon the officers of the prison. Conceding that under the specific language of the charge against him in the indictment he could not be held criminally responsible for the conduct of his co-conspirators in their assault on Murphy with knives, but only for the assault made by him with the weapon he was charged to have used, still that did not render the evidence originally inadmissible and subject to be stricken out. Evidence of a conspiracy to attempt an escape from prison, participated in by defendant, and all the circumstances surrounding the effort to accomplish the purpose of the conspiracy, were competent for the purpose of showing the intent with which the appellant, in furtherance thereof, made the particular assault with the chisel that is charged against him in the indictment. For this purpose the evidence was competent, and if incompetent for any other purpose, the only right which the defendant had was to ask for or tender to the court, an instruction to be given to the jury limiting their consideration of such evidence to the question of the intent with which the defendant made the particular assault charged against him, if they found such assault was made by him.

Complaint is also made by applicant of the admission of evidence over his objection of seven certain knives—one found at a spot on the bridge where the defendant fell when shot by one of the guards as he was making his way back to the quarry after the shooting first commenced—the other six knives picked up near the railroad track where defendant and the other prisoners with the captured officers were gathered when the first shots were fired. We perceive no ground for holding the admission in evidence of these knives improper. It was not essential to the admission in evidence of the knife found where defendant fell that it should have been proven by direct evidence that the defendant had had the knife in his possession. Nor is it of any consequence that the defendant was charged with an assault with a chisel and not with a knife. The proof being that many of the co-conspirators of appellant were armed with knives which were being actually used by them in making the assault upon the prison officers, the finding of the knife in the vicinity where the defendant fell would have warranted the jury in concluding that the defendant was also in possession of a

knife, although the particular assault made by him was with a chisel. The possession of the chisel, which the defendant had picked up as he and the others were passing the engine house in the vicinity of where the assault took place, was not incompatible with possession by him also of a knife, and possession by defendant of both weapons was a circumstance to be considered by the jury as bearing on the question of the intent with which he had made the assault on Murphy with the particular weapon with which he is charged in the indictment as having done so. Aside from this, however, the knife found where defendant fell, together with the other knives found, all in proximity to where the defendant and the other prisoners were gathered when the firing on them by the guards took place, were admissible in evidence, together with all the circumstances accompanying the assault, as bearing on the question of the conspiracy charged to exist among all of the assailing prisoners, including the defendant, and also as evidence of the intent with which the assault in general was made by all the prisoners. This would be true independent of any possession by the defendant of the particular knife found where he fell. The fact that it was found at that place would be but an incidental circumstance which could not however affect its admissibility in evidence for the purposes we have indicated.

Another error assigned is that the court permitted the defendant, a witness in his own behalf, to be asked on cross-examination, over objection, how many times he had been convicted of a felony. The inquiry was entirely proper. (*People* v. *Eldridge,* 147 Cal. 782, 787, [82 Pac. 442].)

The other errors assigned as to rulings upon the admission of testimony have been fully examined, are without merit and no particular mention need be made of them.

Appellant next claims that the court erred in its action relative to instructions, such alleged errors consisting of the giving of certain instructions by the court of its own motion, the refusal to give instructions asked by appellant, and the modification of others tendered by him.

The defense interposed by the appellant on his trial—he was a witness in his own behalf—was that he had not entered into a conspiracy with the other prisoners to attempt an escape or to commit an assault upon the prison officers with that

object in view, nor did he commit any assault at all; that he was working at the rock crusher with the other prisoners and when he saw some of them assaulting the officers and rushing them to the bridge to effect an escape, he took advantage of the apparent opportunity to escape and followed the other prisoners with a view of doing so; that the chisel he had picked up as he and the others were passing the engine house in the vicinity of where the assault took place, but that he did not use it at all in striking Murphy, but simply carried it with him. The theory of the prosecution was that appellant, with the other prisoners engaged in the assault, had entered into a conspiracy to escape and had armed themselves for that purpose with deadly weapons with which the officers, particularly Murphy, were assaulted; that even if the appellant was not a party to the conspiracy between the other prisoners, the evidence showed that he had aided and abetted them in their assault on Murphy with a deadly weapon and, aside from this, was himself an assailant of Murphy with a similar weapon.

We do not perceive what place the theory of the prosecution that appellant might be convicted as an aider and abettor of his co-conspirators in their particular assault with knives on Murphy had in the case. The defendant was not charged generally with an assault with a deadly weapon upon Murphy, but with an assault made by himself with a particular deadly weapon,—to wit, with a blacksmith's steel chisel having a long wooden handle. Had he been charged generally with an assault with a deadly weapon, undoubtedly he might have been convicted by proof that he had aided and abetted the other prisoners in such an assault with such a weapon upon the officers with intent to escape from prison. As an aider and abettor he would then have been in law a principal in the commission of said crime, although he actually made no assault with a deadly weapon himself. (Pen. Code, sec. 31.)

But as he was charged with an assault with a weapon of specific character he could only be convicted by proof of an assault made by him with the weapon charged, and the theory of responsibility as an aider and abettor in an assault made by the other prisoners with other weapons was neither tenable nor permissible under the indictment against him. But as appellant does not make any complaint on this appeal as

to this theory—that is, presents no assignment of error either as to any evidence admitted, which might have any relation to it, or complains of any instruction of the court respecting it, and did not ask the court for any instruction which would have eliminated its consideration by the jury—it is unnecessary to further discuss the proposition. Counsel for appellant doubtless considered this theory of little moment, as the evidence of appellant was that he joined the other prisoners in an attempt to escape; that he was armed with a deadly weapon with which he is charged to have assaulted Murphy, denying only that he was a party to any conspiracy with the other prisoners to escape or to assault the officers with a deadly weapon to effect that purpose, or that he in fact assailed Murphy with the chisel.

Now as to the instructions of which appellant does complain:—

It is clear from the record that some of the instructions tendered by the appellant and refused by the court were substantially contained in other instructions given by the court, hence, appellant has no ground of complaint as to their refusal. This applies to a number of instructions tendered by appellant and refused for that reason.

Appellant complains because the court instructed the jury that it was made a crime by our statute for a person undergoing a sentence in a state prison for less than life to escape therefrom, and that if persons confined in a state prison, one of whom is confined for a term less than life, conspire together to escape from such prison, all are engaged in the conspiracy to commit a crime. This instruction was correct as matter of law (Pen. Code, secs. 105, 182). There was evidence pertinent to which it might be applied and it was proper that the court should instruct the jury as to the criminality of a conspiracy to effect an escape as bearing on the question of the intent with which the defendant, if found to be a party to the conspiracy, made the assault with which he was charged.

There was no error committed by the court in refusing to instruct the jury at the request of appellant that they might return any of four verdicts,—namely, guilty as charged in the information, guilty of assault with a deadly weapon, guilty of simple assault, and not guilty. Under the Penal Code section authorizing prosecutions against "life termers"

for assault with a deadly weapon with malice aforethought, it could not have been in the contemplation of the legislature that the rule applying to prosecutions for assault with intent to commit murder where the deadly weapon with which the assault was committed is specified or described in the information should apply to prosecutions under the section of the Penal Code here under consideration; that in a prosecution, such as is had under this particular code provision, the jury might be warranted in finding the defendant guilty of assault with a deadly weapon or of simple assault and that the court should instruct them to that effect. Nothing could be accomplished by requiring a jury under such a prosecution to return a verdict of either of these lesser degrees of crime against one already serving a term of life imprisonment, because no punishment whatever could be meted out to him as a penalty on such conviction. The punishment for simple assault could only amount to a term in the county jail; as a punishment upon conviction of assault with a deadly weapon, at the option of the trial court, the defendant might be sentenced for a limited time to the county jail or the state prison. But where a defendant is already undergoing a life sentence it would be idle, even absurd, to say that the legislature ever contemplated in a prosecution under section 246 of the Penal Code the return of verdicts upon which no possible punishment could be meted out to the defendant, and which, for all practical purposes, would be equivalent to a verdict, at least as far as any punishment thereon is concerned, of not guilty. It is true that the court upon conviction of either of the lesser degrees of crime might, under the law, impose a fine on the defendant enforceable on execution, but it is hardly worth seriously considering that the legislature intended to permit a return of such verdicts in contemplation solely, of an extreme possibility, of enforcing the payment of such fines.

We think that under a reasonable construction of section 246 of the Penal Code it was never contemplated that any verdicts should be returned in a prosecution under it save either a verdict of guilty as charged in the information or a verdict of not guilty, and that instructions to that effect are all that should be given to a jury. If the evidence in a prosecution under this code section would only warrant a verdict of assault with a deadly weapon or of a simple assault had the

prosecution been under another section which permits the return of such verdicts, then it would be the duty of the jury to return, not any of such verdicts, but a verdict of not guilty. The proof must measure up beyond a reasonable doubt to the exact charge as contained in the information, and unless it does so the defendant is entitled to a verdict of not guilty. In order to warrant the jury in the case at bar in returning a verdict against the defendant it was essential that the jury should find, 1. That the defendant at the time of the commission of the alleged assault was a prisoner undergoing a life sentence in the state prison; 2. That while undergoing such sentence, he, with malice aforethought, made an assault upon Murphy; and, 3. That the defendant made such assault with a deadly weapon. The finding of all these elements beyond a reasonable doubt was essential to a conviction. If the jury entertained a reasonable doubt as to any or all of them, they should have returned a verdict of not guilty. The court so instructed the jury, and we are satisfied that these instructions as to the verdicts they might find were, under a proper construction of the section, the only verdicts, either of which they could return.

We have examined other instructions of which the appellant complains, and without discussing them are satisfied that the action of the court in giving or refusing them was correct.

The judgment and order appealed from are affirmed.

Angellotti, J., Shaw, J., Melvin, J., and Henshaw, J., concurred.