[S. F. No. 8927. In Bank.—May 27, 1919.]

## MARY M. SELOWSKY, Petitioner, v. THE SUPERIOR COURT OF NAPA COUNTY, Respondent.

[1] Contempt of Court — Affidavit — Sufficiency. — An affidavit charging the commission of a contempt need not be more specific in its averments of the facts constituting the contempt than a complaint or an information charging a crime.

[2] Id.—Violation of Injunction—Use of Premises for Prostitution—Affidavit—Specific Acts of Lewdness—Unnecessary Allegation.—In a contempt proceeding for violation of a decree perpetually enjoining the use of premises for the purpose of lewdness, assignation, or prostitution, a general allegation in the affidavit that the affiant knows of his own knowledge that the premises were being used for such purpose, is sufficient to give the court jurisdiction of the proceeding, without an allegation of the commission of specific acts of lewdness.

[3] Id.—Finding—Ultimate Fact.—In such proceeding a finding that the defendant did, in violation of the decree, conduct the premises for the purpose of lewdness, assignation, and prostitution is a sufficient finding of the ultimate fact in issue, and no finding as to particular acts of lewdness, assignation, or prostitution is essential.

[4] Red-light Abatement Act—Penalty for Contempt—Constitutional Law.—Section 6 of the Red-light Abatement Act (Stats. 1913, p. 20), providing a different and more severe penalty for contempt than the penalties prescribed in the general code provisions relating to contempts, is not violative of section 11 of article I of the constitution which provides that all laws of a general nature shall have a uniform operation, since there is much in the nature of the contempt contemplated and condemned by the section of the act which differentiates it from other possible acts of contempt and justifies the imposition of a different and more severe penalty.

[5] Id.—Title of Act—Penalty for Contempt—Provision Covered.—The provisions of the Red-light Abatement Act fixing a penalty for the violation of the decrees provided for therein are sufficiently covered by the title of the act reading as follows: "An act declaring all buildings and places nuisances wherein or upon which acts of lewdness, assignation or prostitution are held or occur or which are used for such purposes, and providing for the abatement and prevention of such nuisances by injunction and otherwise."

[6] Id.—Injunctive Relief—Previous Authority Under Code—Provision of Act Unaffected by.—The Red-light Abatement Act in so far as it purports to confer authority to grant injunctive relief is not nugatory because the court had previous to the enactment general power to enjoin nuisances under the Code of Civil Procedure, since it is competent for the legislature to provide two or more concurrent modes of obtaining a given end, no matter how similar they may be.

[7] Id.—Judgment—Order of Abatement.—A judgment under the Red-light Abatement Act, which in all respects closely follows the words and provisions of the act, is not void, because it does not contain the abatement order provided by section 7 of the act, since the injunctive relief and the order of abatement are not so inseparably connected that the injunction cannot stand unless the abatement order is made a part of the judgment.

PROCEEDINGS on Certiorari to review and annul certain proceedings culminating in a judgment entered by the Superior Court of Napa County convicting the petitioner of contempt of court. Judgment affirmed.

The facts are stated in the opinion of the court.

Frank J. Murphy for Petitioner.

Nathan F. Coombs and Frank L. Coombs for Respondent.

LENNON, J.—*Certiorari* to review and annul certain proceedings culminating in a judgment entered by the superior court of Napa County convicting the petitioner of contempt of court and sentencing her to pay a fine of one thousand dollars and to serve a term of six months' imprisonment in the county jail.

On November 19, 1917, the superior court of Napa County found in an action instituted under the provisions of a statute known as the "Red-light Abatement Act" (Stats.

1913, p. 20) that the "Stone Bridge Saloon," situated within the said county, was owned, in the possession of, and maintained and conducted by the petitioner herein as a place of lewdness, assignation, and prostitution. A decree was duly entered in that action adjudging · and declaring the said premises to be a nuisance, and perpetually enjoining the petitioner from directly or indirectly using or permitting the use of the said premises for the purpose of lewdness, assignation, or prostitution. On July 9, 1918, the said court, having found that the petitioner had used the said premises for the purpose of lewdness, assignation, and prostitution on or about May 18, 1918, entered the contempt judgment here complained of.

The petitioner attacks this judgment on four grounds: (1) That none of the affidavits upon which the contempt proceeding was instituted alleged facts with sufficient detail to give the court jurisdiction to proceed in the matter; (2) that the findings upon which the contempt judgment is based are fatally defective in that they fail to detail any particular and specific act of lewdness, assignation, or prostitution found to have been permitted by the petitioner upon the premises in question; (3) that in so far as the contempt judgment purports to be entered pursuant to section 6 of the statute in question, it is void in this, that the said section 6 is violative of section 11 of article I of the constitution of the state of California; (4) that the judgment is not in fact authorized by section 6 of the statute in question and was not in fact entered pursuant thereto, and that there is no other statutory provision providing for and permitting the particular penalty imposed.

Prior to the institution of the contempt proceedings, the court had entered a valid decree prohibiting the use of the premises in question for the purpose of lewdness, assignation, or prostitution. The petitioner was duly served with a copy of the decree. Willful disobedience of the decree of a court having jurisdiction to make it ordinarily constitutes a contempt. (Code Civ. Proc., sec. 1209; Pen. Code, sec. 166.) Pursuant to section 1211 of the Code of Civil Procedure, the court was empowered to take cognizance of a contempt thus committed in a proceeding instituted by the presentation of an affidavit setting forth the fact or facts constituting the contempt. The contempt charged in the proceedings here in

controversy consisted in the willful use of the premises in question by the petitioner in defiance of the court's decree for the purpose of lewdness, assignation, and prostitution. A sufficient allegation in the affidavit by which the contempt proceedings were instituted to the effect that the premises were so used was essential.   But a proceeding to punish for contempt is criminal in character and the affidavit which is made the basis of the proceeding is the counterpart of the complaint in a criminal action.   (*Frowley* v. *Superior Court,* 158 Cal. 222, [110 Pac. 817]; *Ex parte Gould,* 99 Cal. 360, [37 Am. St. Rep. 57, 21 L. R. A. 751, 33 Pac. 1112].) [1] Therefore, an affidavit charging the commission of a contempt need not be more specific in its averments of the facts constituting the contempt than a complaint or an information charging a crime.

In support of the contempt proceedings and judgment, the record shows the affidavit of one Kelton, sheriff of Napa County, wherein it is alleged:

"That on the 18th day of May, 1918, he, in company with officers of the law, visited the premises belonging to Mrs. M. Salowsky, mentioned and set forth in the judgment in said cause, made, signed and filed herein on the 10th day of November, 1917, and that at said time said Mrs. M. Salowsky was still the owner and in charge of said premises, and was keeping and maintaining a house of lewdness, assignation and prostitution, assisted by one Florence Ponta, as follows:

"That at said time, said Florence Ponta occupied a room at said premises with a man, and affiant verily believes committed with him then and there, the acts of illicit sexual intercourse;

"That thereafter, and on the same day, said Florence Ponta occupied a room at said premises with another man and, as affiant believes, committed such acts;

"That said premises set forth in said judgment hereinbefore referred to, and occupied by said Mrs. M. Salowsky, sometimes known as and called Mary M. Selowsky, and Mrs. M. Krueger, on the 18th day of May, 1918, were in charge of said Mrs. M. Salowsky as the owner thereof, and was conducted as a house of lewdness, assignation and prostitution;

"That Florence Ponta, one of the inmates thereof, is a prostitute, and was working in said house for said Mrs. M. Salowsky as a prostitute;

"That affiant, by reason of his long experience as a Sheriff, is familiar with houses of prostitution and knows of his own knowledge that said premises, on said date, were being maintained, conducted and operated by said Mrs. M. Salowsky as a house of lewdness, assignation and prostitution; and that all of said acts of lewdness, assignation and prostitution committed on said premises were committed with the knowledge and approval of said Mrs. M. Salowsky, and for her personal financial gain, and for the purpose of lewdness, assignation and prostitution."

The petitioner contends that the affidavit was insufficient in that no specific act of lewdness, assignation, or prostitution was alleged except upon the belief of the affiant, and that the grounds upon which that belief was based were not set forth. Conceding that there may be no sufficient allegation of any specific act of lewdness, assignation, or prostitution, we are, nevertheless, of the opinion that the affidavit as a whole was sufficient to institute the contempt proceedings and to support the judgment. (*Ex parte Selowsky,* 38 Cal. App. 569, [177 Pac. 301].) The allegations of Kelton's affidavit that he knew of his own knowledge that the premises in question were in the possession of the petitioner and were being used and conducted by her as a place of lewdness, assignation, and prostitution stated an essential and ultimate fact. Clearly, if Kelton willfully and contrary to his oath averred that to be true which he knew to be false or which he did not know to be true, he was guilty of perjury. (Pen. Code, secs. 118, 125.) Such a general allegation of the use of premises as a place of lewdness, assignation, and prostitution would be proof against demurrer in a complaint charging the violation of section 315 of the Penal Code, namely, the keeping of a house of ill fame. It is well settled that a general allegation of the use of premises for the purpose of lewdness, assignation, and prostitution is sufficient in a complaint, and that it is unnecessary to allege the name or character of the frequenters of the house, or to allege particular acts of lewdness, assignation, or prostitution. (*State* v. *Patterson,* 7 Ired. (N. C.) 70, [45 Am. Dec. 506]; *State* v. *Dame,* 60 N. H. 479, [40 Am. Rep. 331]; *State* v. *Brunell,* 29 Wis. 435; *Betts* v. *State,* 93 Ind. 375; *State* v. *Schafer,* 74 Iowa, 704, [39 N. W. 89]; *Drake* v. *State,* 14 Neb. 535, [17 N. W. 117]; *State* v. *Jones,* 53 W. Va. 613, [45 S. W. 916].) **[2]** By

a parity of reasoning, we are constrained to hold that the affidavit of Kelton was sufficient to give the court jurisdiction to proceed and to pronounce judgment in the contempt proceedings.

[3]   The foregoing discussion practically disposes of the contention that the findings of the court were insufficient in that they failed to detail any specific act of lewdness, assignation, or prostitution permitted on the premises in question by the petitioner. The court did find as a fact that on May 18, 1918, the petitioner did, in violation of the decree of the court, conduct the premises in question for the purpose of lewdness, assignation, and prostitution. This was an amply sufficient finding of the ultimate fact in issue. Any finding as to particular acts of lewdness, assignation, or prostitution would have been out of place as being a recitation of purely evidentiary matter.

Considering the constitutional question, it appears that the court in the judgment here in question imposed penalties authorized by section 6 of the Abatement Act which are in excess of the penalties prescribed in the general code provisions relating to contempts. It is urged that by reason of the fact that said section 6 provides a different and more severe penalty for a certain class of contempts it is violative of section 11 of article I of the constitution, which provides that all laws of a general nature shall have a uniform operation. This provision only requires a law to operate uniformly upon all persons in the same category. (*Wigmore* v. *Buell*, 122 Cal. 144, [54 Pac. 600].) It is satisfied if the statute applies alike to all persons or objects within a class founded upon some natural and intrinsic distinction. (*Vail* v. *San Diego County*, 126 Cal. 35, [58 Pac. 392].) Operation differently upon different classes is proper if there is a reasonable basis for the distinction. (*Kaiser Land and Fruit Co.* v. *Curry*, 155 Cal. 638, [103 Pac. 341].) The application of these principles to the particular legislation here involved has been correctly stated by Mr. Justice Hart as follows: ''We know of no constitutional limitation upon the right of the legislature to fix reasonable penalties for contempts of the judgments, decrees, orders, or processes of courts of justice, and, in admeasuring such punishments, to assign, as it may do and has done in cases of public crime, to certain acts of contempt a greater or less penalty than

is annexed to others, according to the nature of the contempt
with respect to the subject matter of the adjudication vio-
lated and the consequences of such violation to the public
or to individual rights." (*People* v. *Barbieri,* 33 Cal. App.
770, 780, [166 Pac. 812, 816]. See, also, *People* v. *Casa,*
35 Cal. App. 194, [169 Pac. 454].)

. It is objected that every contempt is against the majesty
of the law and the dignity and authority of the court and
that, therefore, classification on the basis of other circum-
stances affecting the public welfare must be held improper.
The answer to this is that there can be no doubt that the
legislature has power to classify with respect to the penalty
to be imposed, not only upon the basis of the inherent nature
of the offense, but also upon the basis of the nature of the
circumstances attending the commission of the offense con-
sidered in their relation to the public welfare. (*People*
v. *Finley,* 153 Cal. 59, [94 Pac. 248] ; *People* v. *Carson,* 155
Cal. 164, [99 Pac. 970].)

The contempt contemplated and condemned by section 6
of the Abatement Act is the keeping of a house of lewdness,
assignation, or prostitution. We think there is much in the
nature of this contempt which differentiates it from other
possible acts of contempt and justifies the imposition of a
different and more severe penalty. The keeping of a house
of prostitution is itself a crime. (Pen. Code, sec. 315.) It
is a crime involving moral turpitude. It is subversive of the
public morals and decency and affects injuriously the sexual
life of the people in a manner and to an extent unparalleled
by any other act. It is not to be forgotten that morals,
decency, and sexual purity have been protected by elaborate
penal legislation from the earliest times on the theory that
the fate of a nation depends on the breed of men it produces.
[4] It follows that it was competent for the legislature to
provide for a distinctive and more severe penalty for the
commission of those acts of contempt contemplated and con-
trolled by the statute in question.

*Ex parte Clancy,* 90 Cal. 553, [27 Pac. 411], cannot be
relied upon as an authority against the foregoing conclusion.
While in that case the writer of the main opinion said that
it was not competent for the legislature to provide one mode
of reviewing judgments in contempt proceedings in general
and another mode of reviewing contempt proceedings arising

in cases under the Insolvent Act, and while a majority of the court concurred in the result, still it will be noted that the conclusion reached by the writer of the main opinion concerning the constitutional· question involved did not receive the concurrence of the majority of the court. But, aside from this, in that case no reasonable basis for any classification was suggested and probably none could have been suggested. There is, therefore, nothing in that decision which conflicts with our holding here.

Nor can the statute be assailed on the theory that it conflicts with section 1218 of the Code of Civil Procedure. That section cannot be said to purport to fix the penalty for all contempts. Indeed, the next succeeding section provides a different punishment for certain classes of contempts, while a still different punishment is provided in the Penal Code for the contempts enumerated in section 166 thereof. (*People* v. *Barbieri, supra.*)

[5] There is no merit in the contention that the provisions of the statute in question fixing a penalty for the violation of the decrees provided for therein are not covered by the title of the act. The title reads: ''An act declaring all buildings and places nuisances wherein or upon which acts of lewdness, assignation, or prostitution are held or occur or which are used for such purposes, and providing for the abatement and prevention of such nuisances by injunction and otherwise.'' (Stats. 1913, p. 20.) This is sufficient to cover provisions for the punishment of the violation of injunctions provided for in the body of the statute. ''A title fairly expressing the general subject covers all proper means and instrumentalities which will or may facilitate the accomplishment or enforcement of the purpose expressed, such for instance, as a provision prohibiting violations of the act or prescribing a penalty or other punishment for such violations.'' (26 Am. & Eng. Ency. of Law, 588.)

[6] There is no merit in the contention that injunctive relief is not ''expressly provided for'' in the act in question. This contention is apparently based upon the theory that because the court had authority to grant injunctive relief pursuant to the provisions of an earlier statute, the Abatement Act, in so far as it purports to confer authority to grant injunctive relief, is nugatory since it assumes to give what the court already has. It is undoubtedly competent for the

legislature to provide two or more concurrent modes of obtaining a given end, no matter how similar they may be. Granting that the court already had a general power to enjoin nuisances pursuant to the provisions of the Code of Civil Procedure, it nevertheless appears that the Abatement Act does in terms authorize the entering of a permanent injunction, such as that entered in the original proceeding in this case on November 19, 1917. Since, therefore, section 6 of the act authorizes the penalty here imposed in case of the violation of any decree "expressly provided for" in the act, it follows that the contempt judgment herein complained of was in fact authorized by the act.

[7] It is suggested by the petitioner that there was in fact no proper judgment pursuant to the terms of the Abatement Act, because the judgment did not contain the order contemplated by section 7 of the act. That section, in words that are apparently mandatory, directs the entry of an order requiring the removal and sale of "all fixtures, musical instruments and movable property used in conducting . . . the nuisance," and requiring the "effectual closing of the building . . . against its use for any purpose," and so keeping it closed for a year. In all respects, save that noted, the proceedings and judgment in the original action closely followed the words and provisions of the Abatement Act. Unless, therefore, the order of abatement is so inseparably connected with the injunctive relief provided for in sections 3 and 6 of the act that the intent of the legislature is manifest that no injunction shall stand unless the abatement order is made part of the judgment, the petitioner's suggestion is entitled to no consideration. The injuctive relief may be had against anyone maintaining the nuisance whether owner or tenant. The abatement order is a remedy only against the owner. If the owner has been guilty of no contempts, he may, by filing a bond, stay the abatement order which apparently runs out of itself in a year. The injunctive relief, on the other hand, can be made permanent. There may be cases where the owner is completely innocent, ignorant of the use of the property and opposed to any immoral use thereof. In such case, the entire purpose of the statute would be accomplished by the injunction and an abatement order would not only serve no useful purpose but would work a positive injustice. Upon this analysis of the act, there is no doubt but that the

court may enter a perpetual injunction pursuant to the Abatement Act without necessarily including in the judgment the order of abatement contemplated in section 7 of the act. Such an injunction was duly entered by the superior court of Napa County in the original proceeding in this case on November 19, 1917.

The judgment is affirmed.

Wilbur, J., Melvin, J., Shaw, J., Olney, J., Lawlor, J., and Angellotti, C. J., concurred.