[Crim. No. 5931. In Bank. Dec. 4, 1956.]

THE PEOPLE, Respondent, v. CLIFFORD JEFFERSON, Appellant.

Douglas R. Greer and Richard A. Case, under appointment by the Supreme Court, for Appellant.

Edmund G. Brown, Attorney General, and Doris H. Maier, Deputy Attorney General, for Respondent.

McCOMB, J.—This is an automatic appeal from a judgment of guilty of violating section 4500 of the Penal Code (assault with a deadly weapon by a prisoner undergoing a life sentence in a state prison)[1] after trial by a jury. There is also an appeal from the order denying defendant's motion for a new trial.

On September 13, 1955, defendant, an inmate of Folsom State Prison undergoing a life sentence, assaulted with a deadly weapon another prisoner, Leonard Thompson.

## QUESTIONS

*First*: *Did the trial court err in denying defendant's motion to set aside the indictment?*

*No.* Section 995 of the Penal Code provides two grounds for setting aside an indictment: "1. Where it is not found, endorsed, and presented as prescribed in this code. 2. That the defendant has been indicted without reasonable or probable cause."

Defendant contends that the trial court erred in failing to grant his motion to set aside the indictment because the foreman of the grand jury did not comply with the provisions of section 907 of the Penal Code.[2]

---

[1]Section 4500 of the Penal Code reads: "Every person undergoing a life sentence in a State prison of this State, who, with malice aforethought, commits an assault upon the person of another with a deadly weapon or instrument, or by any means of force likely to produce great bodily injury, is punishable with death."

[2]Section 907 of the Penal Code reads: "Before considering a charge against any person, the foreman of the grand jury shall state to those present the matter to be considered and the person to be charged with an offense in connection therewith, and direct any member of the grand

Section 995, subdivision 1, of the Penal Code has been interpreted as applying only to those sections in part 2, title 5, chapter 1, of the Penal Code beginning with section 940. (*People* v. *Colby,* 54 Cal. 37; *People* v. *Kempley,* 205 Cal. 441, 447 [271 P. 478].)

In *People* v. *Kempley, supra,* this court held an indictment was not subject to attack under the provisions of section 995 of the Penal Code because of noncompliance with the requirements of section 907 of the Penal Code. It said at .page 447: ''The provisions of the foregoing section were not complied with; but the neglect or failure of the foreman to comply therewith is not made a ground for setting aside the indictment by section 995 of the Penal Code and section 907 contains within itself the penalty for the violation of its provisions.''

This rule is applicable to the facts of the present case.

█ The record before the grand jury disclosed that Thompson was waylaid by three men, two of whom had knives. Defendant was one of the men who had a knife, and he inflicted knife wounds upon Thompson. From this evidence it appears that the requirements of section 995, subdivision 2, of the Penal Code were satisfied since there was reasonable ground for the grand jury's conclusion that defendant had violated section 4500 of the Penal Code. It is evident that the ruling of the trial court was correct.

█ *Second: Is section 4500 of the Penal Code unconstitutional in that it results in a denial of due process of law and equal protection of the laws?*

*No.* This court has upheld the constitutionality of the statute in *People* v. *Berry,* 44 Cal.2d 426, 430 [1] [282 P.2d 861], and *People* v. *Wells,* 33 Cal.2d 330, 335 et seq. [2a]-[3] [202 P.2d 53].

█ *Third: At the time of the assault was defendant undergoing a life sentence for murder in the second degree?*

*Yes.* At the time of the assault defendant was serving a sentence for murder in the second degree, which carries a punishment of from five years to life. (Pen. Code, § 190.) The Adult Authority may fix this sentence at a lesser term than life. However, at the time of the assault here involved

jury who has a state of mind in reference to the case or to either party which will prevent him from acting impartially and without prejudice to the substantial rights of the party to retire. Any violation of this section by the foreman or any member of the grand jury is punishable by the court as a contempt.''

it had not so acted. Therefore, under the settled law of this state defendant was undergoing a "life sentence" when he committed the assault. (*People* v. *Smith,* 36 Cal.2d 444, 445 [1] [224 P.2d 719]; *People* v. *McNabb,* 3 Cal.2d 441, 444 [1] [45 P.2d 334]; *People* v. *Wells,* 33 Cal.2d 330, 334 [1] [202 P.2d 53]; *People* v. *Finley,* 153 Cal. 59, 62 [94 P. 248].)

■ *Fourth: Was the evidence sufficient to justify a finding that defendant was "undergoing a life sentence?"*

*Yes.* The custodian of records at Folsom State Prison produced a certified copy of the judgment and commitment under which defendant was held. This judgment of the Superior Court of Kern County, entered on the 20th day of May, 1949, showed that defendant was guilty of murder in the second degree and was sentenced to the state prison for the term prescribed by law.

The custodian testified that he acted as secretary for the Adult Authority at Folsom State Prison. He said the records disclosed the Adult Authority had not fixed any term for defendant.

In addition, defendant admitted he knew his term had not been fixed by the Adult Authority on the date of the assault.

This constituted substantial evidence to sustain the jury's finding that defendant was at the time of the assault "undergoing a life sentence." (See *People* v. *Wells,* 33 Cal.2d 330, 337-338 [4a]-[4b] [202 P.2d 53].)

■ *Fifth: Did the trial court commit prejudicial error in instructing the jury as follows:*

"Section 5077 of the Penal Code of California provides, so far as pertinent in this case, that the fixing of sentences shall be determined by the Adult Authority.

"Every prisoner confined in a state prison of the State of California for a term, the maximum of which is life, is in legal effect, serving a life sentence in such state prison until and unless his term is legally reduced to a term less than life.

"A violation of Penal Code, Section 187, to wit, Murder of the Second Degree, is punishable by a term the maximum of which is life imprisonment.

"If, therefore, you find from the evidence, to a moral certainty and beyond a reasonable doubt that the defendant, Clifford Jefferson, was, on the 13th day of September, 1955, legally serving a sentence in the state prison of the State of California at Folsom, for a violation of Penal Code Section 187, murder of the second degree, and that his term had not, prior to said date, been reduced to a term of less than life,

it is your duty to find that the said defendant, Clifford Jefferson, was then and there serving a life sentence and you should so find.''

*No.* The instructions did not take from the jury the question: Did it believe from the evidence that at the time of the assault defendant was serving a sentence for murder in the second degree, the term for which had not been fixed by the Adult Authority? This was the extent of the factual determination to be made by the jury. The length of the punishment imposed by statute for second degree murder was one to be given to the jury by the court as a matter of law. The instruction was correctly stated and finds full support in *People* v. *McNabb, supra*; *People* v. *Wells, supra*; and *People* v. *Berry, supra,* p. 430 [2].

*People* v. *Oppenheimer,* 156 Cal. 733 [106 P. 74], and *People* v. *Carson,* 155 Cal. 164 [99 P. 970], decided before the enactment of the indeterminate sentence law, are not applicable in this case.

■ *Sixth: Did the trial court err in refusing to give instructions requested by defendant relating to lesser included offenses?*

*No.* Defendant contends that the trial court committed prejudicial error when it refused to give his proposed instructions (a) relating to lesser offenses, (b) relating to included offenses or attempts, and (c) defining ''assault.''

In *People* v. *Finley, supra,* p. 63; *People* v. *Carson,* 155 Cal. 164, 175 [99 P. 970]; and *People* v. *Oppenheimer,* 156 Cal. 733, 737 [106 P. 74], decided under Penal Code, section 246 (the predecessor of section 4500 of the Penal Code) a contention similar to that made by defendant here was held untenable.

In *People* v. *Carson, supra,* at page 168, this court held that section 246 of the Penal Code, which read: ''Every person undergoing a life sentence in the state prison of this state, who, with malice aforethought, commits an assault upon the person of another with a deadly weapon or instrument, or by any means or force likely to produce great bodily injury, is punishable with death,'' was not unconstitutional.

It held the section neither denied to a defendant the equal protection of the law guaranteed by the fourteenth amendment to the Constitution of the United States, nor contravened the provisions of section 11 of article I of the state Constitution declaring that all laws of a general nature shall

have a uniform operation. (See also *People* v. *Finley, supra,* p. 62; *People* v. *Quijada,* 154 Cal. 243, 246 [97 P. 689].)

▌ When the Legislature enacted section 4500 of the Penal Code in the same wording as that in the former section 246 of the Penal Code, it presumably knew of the prior decisions construing the section and thus used the same language intending that it be given the same meaning. (*People* v. *Berry, supra,* p. 430 [1]; *People* v. *Superior Court,* 118 Cal. App.2d 700, 703 [2] [258 P.2d 1087].)

▌ *Seventh* : *Was there a prejudicial variance between the charge in the indictment and the proof adduced?*

*No.* The indictment was framed in the words of section 4500 of the Penal Code. The evidence disclosed that two persons, Carter and defendant, assaulted Thompson with knives, inflicting 14 or 15 wounds. Defendant was seen stabbing Thompson with *a knife* and running from the vicinity of the fracas to the Education Building. Two knives with fresh bloodstains were found in the Education Building, one under a water cooler and the other in the drafting room. Thus, regardless of which knife defendant used, there was substantial evidence to justify the jury's finding that one of them was used by him. From the evidence the jury could have concluded which particular knife was used by defendant in making the assault. There is, therefore, no variance between the indictment and the proof.

▌ *Eighth* : *Did the trial court err in refusing to admit in evidence sections 190, 1168, 3020, 3023 and 5077 of the Penal Code?*

*No.* Section 1823 of the Code of Civil Procedure defines "judicial evidence" as the means sanctioned by law of ascertaining in a judicial proceeding the truth respecting a question of fact.

▌ Section 1875, subdivision 2, of the Code of Civil Procedure provides that courts will take judicial notice of "whatever is established by law." Thus under the code provisions and under the general rules of law, courts take judicial notice of the laws of the state. (*Peck* v. *Noee,* 154 Cal. 351, 353 [97 P. 865].)

▌ Defendant's offer in evidence of copies of the above sections of the Penal Code was properly refused. These were not evidentiary matters to be submitted to the jury, but presented questions of law upon which the trial judge could instruct the jury if such instructions were proper under the

evidence. The record disclosed that the jury was fully and properly instructed as to the law upon all issues presented to it.

 *Ninth: Did the trial court err in denying defendant's motion for a new trial on the ground of newly discovered evidence?*

*No.* Affidavits of William Carter and Frank Williams in support of the motion purporting to exculpate defendant were filed. A counteraffidavit of Kenneth Wells was also introduced stating that William Carter had subsequently retracted his statement contained in the affidavit he had executed and which was offered by defendant.

The record discloses that counsel for defendant had full opportunity to present this matter at the time of the trial. Carter had already been convicted of being a participant in the same affray, and the evidence of Thompson on the stand disclosed that Williams was also a participant. Thus counsel for defendant was fully aware of the part these affiants played in the commission of the offense and could have elicited testimony from them at the time of the trial.

 Applications for a new trial based upon newly discovered evidence are addressed to the sound discretion of the trial court. In the absence of a clear showing of an abuse of discretion the trial court's ruling will not be disturbed on appeal. (*People* v. *Smith,* 36 Cal.2d 444, 449 [224 P.2d 719]; *People* v. *Ross,* 120 Cal.App.2d 882, 889 [13] [262 P.2d 343]; *People* v. *Parkinson,* 138 Cal.App. 599, 612 [4] [33 P.2d 18].)

It is clear that the trial judge disbelieved both the affidavits of Williams and Carter in support of the motion for a new trial. Since the question of weight and credibility to be attached to the affidavits was for the trial judge, defendant has failed to demonstrate any error or abuse of discretion.

The judgment and order are affirmed.

Gibson, C. J., Shenk, J., Carter, J., Traynor, J., Schauer, J., and Spence, J., concurred.

Appellant's petition for a rehearing was denied January 3, 1957.