[Crim. No. 6728.   In Bank.   Mar. 20, 1961.]

THE PEOPLE, Respondent, v. RUDOLPH WRIGHT, Appellant.

Thomas S. Montgomery, under appointment by the Supreme Court, for Appellant.

Stanley Mosk, Attorney General, Arlo E. Smith and Albert W. Harris, Jr., Deputy Attorneys General, for Respondent.

GIBSON, C. J.—Defendant was charged with violating section 4500 of the Penal Code in that, while undergoing a life sentence in a state prison, he assaulted with malice aforethought Robert Grayson, a fellow prisoner, by means of force likely to produce great bodily harm and that Grayson died as a result of the assault.[1] A jury found that defendant was guilty as charged and that he was sane at the time of the commission of the offense. His motion for new trial was denied, the punishment was fixed at death, and the appeal comes to us automatically under subdivision (b) of section 1239 of the Penal Code.

On the morning of November 20, 1959, defendant and another prisoner, Howard Regan, approached Grayson in an exercise area adjacent to their cells and talked to him about some cigars he assertedly had taken from Regan. Defendant and Grayson took about ten steps toward the rear of the exercise area, and then defendant grabbed him by the collar and, while holding him, struck him several times with a knife. A guard called to defendant to stop, and defendant released Grayson, who fell to the floor with knife wounds in his chest, stomach and arm. After the assault defendant threw the knife out of a window and returned to his cell where he tore his

---

[1]Section 4500 of the Penal Code provides: "Every person undergoing a life sentence in a state prison of this State, who, with malice aforethought, commits an assault upon the person of another with a deadly weapon or instrument, or by any means of force likely to produce great bodily injury is punishable with death; provided, however, in cases in which the person subjected to such assault does not die within a year and a day after such assault and as a proximate result thereof, the punishment shall be death or imprisonment in the state prison for life without possibility of parole for nine years, at the discretion of the court or jury trying the same, . . . ."

In 1949 defendant was convicted of first degree murder and kidnaping and was sentenced to life imprisonment for each conviction, the terms to run consecutively, and at the time of the assault he was imprisoned pursuant to these convictions.

blood-stained trousers into small pieces and flushed them down the toilet. The wound in Grayson's chest extended into his heart, and he died within a few minutes after the attack as a result of the wound.

Defendant testified that after the discussion about the cigars he turned to walk away, that Grayson drew a knife, that he lunged at Grayson and grabbed it, and that the next thing he remembered was that someone shouted at him to stop. He said that he did not remember striking or stabbing Grayson and that the only time he remembered having the knife in his possession was ''after it was all over.''

There is no merit in defendant's claim that, since a knife was used in the attack, the evidence shows an assault ''with a deadly weapon'' within the meaning of section 4500 and is not sufficient to establish an assault ''by any means of force likely to produce great bodily injury'' within that section. A single crime is set forth in the section, not two separate and distinct crimes, and the assault with a knife, which the evidence shows occurred here, while an assault with a deadly weapon, is also one by means of force likely to produce great bodily harm. No other claim of insufficiency is made, and, after reviewing the record, we have concluded that the evidence is clearly sufficient.

The court was not required, as contended by defendant, to instruct the jury on lesser included offenses. In *People* v. *Carson* (1909), 155 Cal. 164, 175-177 [99 P. 970], and *People* v. *Oppenheimer* (1909), 156 Cal. 733, 745 [106 P. 74], it was held that in prosecutions under former section 246 of the Penal Code, the predecessor of section 4500, such instructions should not be given. The same rule was applied in *People* v. *Jefferson* (1956), 47 Cal.2d 438, 444-445 [303 P.2d 1024], in a prosecution under section 4500. The opinion in the Jefferson case relied upon the rule relating to re-enactment of statutes pointing out that when the Legislature enacted section 4500, it presumably knew of the prior decisions construing former section 246 and used the same language intending that it be given the same meaning. (47 Cal.2d at p. 445.) In 1959 a provision was added to section 4500 relating solely to the penalty to be imposed where the victim survives the assault, and all of the language contained in former section 246 and subsequently in section 4500 was reenacted without change.

Defendant also claims the court erred in refusing to give the following instruction: ''You are reminded that a

person might be legally sane, as we define that term in dealing with the question of criminal responsibility, and yet be in an abnormal mental or nervous condition; and because of such condition he might be less likely or unable to have or to hold a specific intent or a certain state of mind, which is an essential ingredient of a certain crime. We have received evidence bearing on the mental and nervous condition of the defendant at the time of the alleged commission of the crime charged. Such evidence may be considered by you in determining whether or not defendant did any act charged against him and, if so, whether or not, at that time, there existed in him the specific mental factor and intent which must accompany that act to constitute a certain crime or degree of crime. You do not have before you any issue as to defendant's legal sanity." (See Cal. Jury Instns., Crim. (rev. ed. 1958) No. 73-B, pp. 99-100; *cf. People* v. *Wells,* 33 Cal.2d 330, 343 et seq. [202 P.2d 53].) Defendant urges that the refusal to give the instruction, in effect, precluded the jury from determining that he was incapable of acting with malice aforethought at the time the assault occurred.

The jury was instructed that, if the prosecution does not prove beyond a reasonable doubt and to a moral certainty each of the elements of the crime "including that the act was done with malice aforethought," the defendant must be acquitted, that malice aforethought denotes purpose and design in contradistinction to accident and mischance, that it is express when there is a deliberate intention unlawfully to take away life and implied when no considerable provocation appears or when the circumstances attending the crime show an abandoned and malignant heart, and that it is manifested by the doing of an unlawful and felonious act intentionally, deliberately, and without legal cause or excuse. The jury was also instructed that to be guilty of crime one must intend his conduct and engage in it knowingly and wilfully, that where a person commits an act without being conscious of it, his act is not criminal even though if committed by a person who was conscious it would be a crime, and that this rule applies in cases in which there is no functioning of the conscious mind and the person's acts are controlled solely by the subconscious mind.

The only evidence relied upon as warranting the refused instruction is defendant's testimony that he was frightened when Grayson drew the knife and that he did not remember how he got the knife and did not recall striking or stabbing

Grayson. His testimony is direct evidence of his state of mind at the time the offense was committed and is in conflict with other testimony. The conflict was resolved against him by the jury after it was fully instructed as to malice aforethought and criminal intent, and defendant was not prejudiced by the refusal to give the requested instruction.

The judgment and order denying the motion for a new trial are affirmed.

Traynor, J., Schauer, J., McComb, J., Peters, J., White, J., and Dooling, J., concurred.

Appellant's petition for a rehearing was denied April 19, 1961.

