[Crim. No. 707. Third Appellate District.—November 15, 1923.]

THE PEOPLE, Respondent, v. GEORGE WALLER, Appellant.

[1] CRIMINAL LAW—FRAUDULENT SALE OF STOCK IN TRADE—PLEADING. A defendant who, upon sufficient evidence, is found guilty under section 154 of the Penal Code of the crime of "fraudulently selling and conveying part of a stock in trade of a value exceeding one hundred dollars with intent to defraud, hinder and delay his creditors of their rights, claims and demands, a felony, as charged in the information," is not prejudiced by the inclusion in such information of the charge that he "willfully, wrongfully, unlawfully, fraudulently, and feloniously and with the fraudulent and felonious intent then and there and thereby to defraud, hinder, and delay his said creditors . . . of their rights, claims, and demands, flee, abscond, and depart from the State of California with and did take with him and remove from said State of California, the proceeds of and receipts from said sales."

[2] ID.—REMOVAL OF GOODS FROM STATE — INTENT — EVIDENCE.—In a prosecution under section 154 of the Penal Code, evidence tending to show that the defendant fraudulently removed the proceeds of and receipts from the sales of the goods from the state of California is admissible to prove that he sold the property with intent to defraud, hinder, and delay his creditors.

[3] ID.—PLEADING IN LANGUAGE OF STATUTE—MEANS EMPLOYED.—In a prosecution under section 154 of the Penal Code, it is sufficient to charge the offense in the language of the statute; and it is not necessary to set forth the manner or means employed to perpetrate the crime.

[4] ID.—INTENT TO DEFRAUD—PLEADING.—Where a statute denounces as criminal an act which is done with intent to defraud, it is sufficient to allege the intent to defraud in the language of the statute.

[5] ID.—MISCONDUCT OF DISTRICT ATTORNEY — OTHER OFFENSES—IMPROPER QUESTIONS—WAIVER.—In a prosecution under section 154 of the Penal Code, the defendant is not prejudiced by being asked on cross-examination if he had not been charged with grand larceny and convicted, where he answers both parts of such double question in the negative before any objection is made; and, by withdrawing his objection to a like question after the court had sustained it and by thereafter permitting, without objection, a line of similar questions, the defendant must be held to have waived any claim of misconduct on the part of the district attorney.

[6] ID.—USE OF ALIASES—CROSS-EXAMINATION.—Where, on his direct examination, the defendant testified that he had never assumed the various *aliases* set forth in the information, it was proper for the district attorney on cross-examination to question him along the same line.

[7] ID.—CLASSIFICATION OF CRIME—CONSTITUTIONAL LAW.—THE proviso contained in section 154 of the Penal Code, making it a felony fraudulently to sell or remove a part of a stock in trade of a value exceeding one hundred dollars, while the fraudulent sale or removal of other property is made a misdemeanor only, is not violative of sections 11 or 21 of article I of the state constitution, or of the fourteenth amendment to the constitution of the United States.

[8] ID.—RECOMMENDATION OF LENIENCY—MISAPPREHENSION OF LAW—REVERSAL.—In a prosecution for a violation of section 154 of the Penal Code, the facts that the jury appended to their verdict a recommendation "to the leniency of the court" and that, when the trial judge informed the jury that under the indeterminate sentence law he had not discretion to determine the length of imprisonment, one of the jurors replied that they had been under the impression that the court determined the sentence, are not sufficient to entitle the defendant to a reversal on the ground that the verdict was returned under a misapprehension of the law.

APPEAL from a judgment of the Superior Court of Stanislaus County. L. W. Fulkerth, Judge. Affirmed.

The facts are stated in the opinion of the court.

R. R. Fowler and T. B. Scott for Appellant.

U. S. Webb, Attorney-General, and J. Charles Jones, Deputy Attorney-General, for Respondent.

FINCH, P. J.—The defendant has appealed from the judgment herein and the order denying his motion for a new trial. The parts of the information material here are as follows:

"J. Waller, *alias* Wallen, *alias* Wallach, *alias* Wallenstein, is accused . . . of the crime of fraudulently selling and conveying part of a stock in trade of a value exceeding $100 with intent to defraud, hinder, and delay his creditors of their rights, claims and demands, a felony, committed as follows: That the said J. Waller, *alias* Wallen, *alias* Wallach, *alias* Wallenstein, on or about the 3d day of December, A. D.

nineteen hundred and twenty-two, at and in said County of Stanislaus . . . was then and there the owner of and was in possession of a large stock in trade consisting principally of men's furnishings, goods, shoes, hats, caps, clothing, suit cases, and leather goods, . . . and was then and there indebted to a large number of persons in an amount exceeding $7,000, the purchase price of said stock in trade (naming the creditors and stating the respective sums owing to them), and he . . . did then and there . . . willfully, wrongfully, unlawfully, feloniously and fraudulently sell and convey a large part of said stock in trade, to wit: a part thereof of a value exceeding $100 . . . and of the value of approximately $4,000 . . . to various and sundry persons and customers, with the felonious and fraudulent intent then and there and thereby to defraud, hinder, and delay his said creditors . . . of their rights, claims, and demands, *and did then and there and thereupon, willfully, wrongfully, unlawfully, fraudulently, and feloniously and with the fraudulent and felonious intent then and there and thereby to defraud, hinder, and delay his said creditors . . . of their rights, claims, and demands, flee, abscond, and depart from the State of California with and did take with him and remove from said State of California, the proceeds of and receipts from said sales.''*

Though there are some contradictions, the evidence sufficiently shows the following facts. August 5, 1922, the defendant opened a store at Modesto for the sale of merchandise of the character described in the information. He deposited $5,400 in a bank in that city. In order to purchase goods on credit the defendant exhibited his bank-book, showing such deposit to a large number of wholesale merchants in San Francisco and Los Angeles, and, on the strength thereof, they sold him merchandise on credit to the value of many thousands of dollars. He continued to make purchases on credit for about three months after he commenced business, making partial payments from time to time on some purchases, but generally putting off payment on various pretexts. In the latter part of September the defendant placed a large sign in front of his store, reading as follows: ''Everything being sold at factory prices. You will save 50% on all purchases.'' One witness testified that before opening his store the defendant put up a sign reading:

"Will sell merchandise fifty cents on the dollar." There is direct evidence to the effect that defendant sold some articles below wholesale cost and that he kept on display certain articles marked below cost. The defendant purchased goods from wholesale merchants of the approximate value of $12,000 and paid on the purchase price thereof about $4,000. The goods on hand in his store when he ceased to do business were of a value under $4,000. The defendant testified that he sold goods on credit to the value of about $1,500, but he was unable to give the name of a single person to whom he had sold on credit, and hence the jury was justified in treating his testimony as unworthy of belief. Defendant left about the first of December and went to Montreal, Canada, where his family resided. It seems that he informed no one of his intention to leave or of the place to which he intended to go. He mailed the key of his store to the board of trade in San Francisco, stating in an accompanying letter: "I regret to state that it has been impossible for me to continue business." No books or accounts were found in the store after the departure of defendant. He had from time to time drawn on his bank account to such an extent that only a few dollars remained therein when he closed his store and left. It thus appears that during the three months he conducted the business, on the assumption that he sold goods at wholesale cost, his receipts, together with his original bank deposit, were approximately $9,000 in excess of the amount he actually paid to the wholesale merchants. There is no contention that the evidence is not sufficient to justify the verdict.

Appellant urges five grounds for reversal: 1. That two offenses are charged in a single count of the information. 2. That the acts constituting the fraud charged are not specifically alleged. 3. That the district attorney was guilty of prejudicial misconduct. 4. That the provision of section 154 of the Penal Code making certain acts a felony is unconstitutional. 5. That the verdict of the jury was returned under a misapprehension of the law.

[1] Section 154 of the Penal Code reads: "Every debtor who fraudulently removes his property or effects out of this state, or fraudulently sells, conveys, assigns or conceals his property with intent to defraud, hinder or delay his creditors of their rights, claims or demands, is punishable by

imprisonment in the county jail not exceeding one year, or by fine not exceeding five thousand dollars, or by both; provided, however, that where the property so removed or sold or conveyed or assigned or concealed, consists of a stock in trade or a part thereof, of a value exceeding one hundred dollars, the offense shall be a felony and punishable as such.'' If it be conceded that the language of the information herein italicized states facts which constitute a different offense from that charged in the preceding parts of the information, it is clear that the defendant was not prejudiced by its inclusion in the information. The jury did not convict the defendant of the crime of fraudulently removing his property from the state, but found him ''guilty of fraudulently selling and conveying part of a stock in trade of a value exceeding $100 with intent to defraud, hinder, and delay his creditors of their rights, claims and demands, a felony, as charged in the information.'' **[2]** All evidence tending to show that the defendant fraudulently removed ''the proceeds of and receipts from said sales'' was admissible to prove that he sold the property with intent to defraud, hinder, and delay his creditors. Under such circumstances the alleged defect in the information is not ground for reversal. (*People* v. *Barrios*, 52 Cal. App. 528 [199 Pac. 58].) It is at least doubtful whether the demurrer to the information is sufficient to present the objection here urged. The demurrer, relative to the question under consideration, is ''that more than one offense is charged.'' It is permissible to charge more than one offense in an indictment or information. (Pen. Code, sec. 954.) The statutory ground of demurrer in such a case is ''that more than one offense is charged, except as provided in section nine hundred and fifty-four.'' (Pen. Code, sec. 1004.)

**[3]** The offense is charged in the language of the statute. Appellant contends that the particular facts constituting the alleged fraudulent conduct should have been set forth, citing *People* v. *McKenna*, 81 Cal. 158 [22 Pac. 488], and similar cases. In that case the defendant was charged with obtaining property by false representations, and it was held that such representations should have been alleged. Any one of innumerable false representations may constitute the basis of such an action and it is elementary that a defendant is entitled to be informed of the particular representations

with which he is charged in order that he may prepare his defense. They are among "the acts constituting the offense" required by section 950 of the Penal Code to be alleged "in ordinary and concise language, and in such manner as to enable a person of common understanding to know what is intended." Section 952 requires a statement of "the particular circumstances of the offense charged, when they are necessary to constitute a complete offense." No circumstances other than those charged are necessary to constitute the complete offense alleged in the information. It is not necessary to set forth the manner or means employed to perpetrate the crime. Section 154 sets forth all the elements necessary to constitute the offense therein defined. "When the statute defines or describes the acts which shall constitute a particular offense, it is sufficient in an indictment to describe those acts in the language employed in the statute, applying them, of course, concretely to the person charged." (*People* v. *Ward,* 110 Cal. 369, 372 [42 Pac. 894]; *People* v. *Mahony,* 145 Cal. 104 [78 Pac. 354].) "Embezzlement is the fraudulent appropriation of property by a person to whom it has been entrusted." (Pen. Code, sec. 503.) It has been held that such "fraudulent appropriation" may be charged in the language of the statute. (*People* v. *Tomlinson,* 66 Cal. 344 [5 Pac. 509]; *People* v. *Gordon,* 133 Cal. 328 [85 Am. St. Rep. 174, 65 Pac. 746]; *People* v. *Holder,* 53 Cal. App. 45 [199 Pac. 832].) No reason appears why the same rule should not apply here. If the word "fraudulently" were omitted from section 154, as it is in a number of similar statutes of other states, the remaining parts of the section would completely define the offense sought to be prevented, because an act which is done with intent to defraud creditors is necessarily a fraudulent act. **[4]** Where a statute denounces as criminal an act which is done with intent to defraud, the authorities all agree that it is sufficient to allege the intent to defraud in the language of the statute.

**[5]** The district attorney asked the defendant a number of improper questions on cross-examination, without objection, and finally asked him if he had not been indicted on account of a certain business transaction. To this last question the defendant objected and the court promptly sustained the objection. Counsel for defendant then with-

drew the objection and the defendant answered that he had not been so indicted. The district attorney then, after further questions along the same line, asked the defendant if he had not been charged with grand larceny and convicted. While this last question was least objectionable of any asked, counsel for defendant made objection to it, assigned the asking thereof as prejudicial misconduct, and asked the court to instruct the jury to disregard it. The court declined to so instruct. The defendant had answered the question in the negative before the objection was made. The district attorney, if acting in good faith, had the right to ask the defendant on cross-examination if he had been convicted of a felony. (Code Civ. Proc., sec. 2051.) The question, however, was double. It was not proper to ask the defendant if he had been charged with the commission of a felony. If the defendant had answered that he had been charged with the offense of grand larceny but not convicted, then it might reasonably be argued that he was prejudiced by the mere asking of the question. But since one cannot be convicted of a felony without first having been charged with its commission, the charge is implied by the question whether he had been so convicted, and the defendant having answered both parts of the double question in the negative, it does not appear that any prejudice resulted from the question. Besides, by withdrawing his objection to a like question after the court had sustained it and by thereafter permitting, without objection, a line of similar questions, the defendant must be held to have waived the alleged misconduct.

[6] On his direct examination the defendant testified that he had never assumed the various *aliases* set forth in the information. On cross-examination the district attorney questioned him along the same line. It is urged that this was prejudicial misconduct. It was not assigned as misconduct during the trial. Neither were the questions improper.

[7] It is contended that the proviso contained in section 154, making it a felony fraudulently to sell or remove a part of a stock in trade of a value exceeding $100, while the fraudulent sale or removal of other property is made a misdemeanor only, is violative of section 11 of article I of the constitution, providing that "all laws of a general nature shall have a uniform operation," and section 21 of the same

article, providing that no citizen or class of citizens shall
"be granted privileges or immunities which, upon the same
terms, shall not be granted to all citizens," and of the four-
teenth amendment to the constitution of the United States,
providing that no state shall "deny to any person within its
jurisdiction the equal protection of the laws." In *Selowsky*
v. *Superior Court of Napa County,* 180 Cal. 404, 409 [181
Pac. 652, 655], in discussing section 11 of article I of the
constitution, it is said: "This provision only requires a law
to operate uniformly upon all persons in the same cate-
gory. . . . It is satisfied if the statute applies alike to all
persons or objects within a class founded upon some natural
and intrinsic distinction. . . . Operation differently upon
different classes is proper if there is a reasonable basis for
the distinction. . . . The application of these principles to
the particular legislation here involved has been correctly
stated by Mr. Justice Hart as follows: 'We know of no con-
stitutional limitation upon the right of the legislature to fix
reasonable penalties for contempt of the judgments, decrees,
orders, or processes of courts of justice, and, in admeasuring
such punishments, to assign, as it may do and has done in
cases of public crime, to certain acts of contempt a greater
or less penalty than is annexed to others, according to the
nature of the contempt with respect to the subject matter
of the adjudication violated and the consequences of such
violation to the public or to individual rights.' . . . The
legislature has power to classify with respect to the penalty
to be imposed, not only upon the basis of the inherent nature
of the offense, but also upon the basis of the nature of the
circumstances attending the commission of the offense con-
sidered in their relation to the public welfare." To justify
a court in declaring a law unconstitutional, its invalidity
should appear with the greatest clearness and certainty. It
cannot be said that the classification relative to the punish-
ments provided for in section 154 is not founded upon
natural and intrinsic distinctions. The facility with which
a part of a stock in trade may be removed or sold without
attracting attention is a matter of common knowledge. The
discovery of such removal or sale would generally require
an inventory of the remaining stock. It is a common prac-
tice for retail merchants to purchase their stocks of goods
on credit and from those engaged in the wholesale trade at

places far distant from the retailers' places of business, thus enabling the unscrupulous retailer to defraud such creditors with a minimum likelihood of detection. These are among the "circumstances attending the commission of the offense" defined in section 154 which constitute a reasonable basis for the classification therein made.

[8] The jury appended to the verdict a recommendation "to the leniency of the court." After the verdict had been . returned and the court had fixed the time for sentence, the trial judge referred to the recommendation and informed the jury that under the indeterminate sentence law he had no discretion to determine the length of imprisonment. One of the jurors replied that they had been under the impression that the court determined the sentence. Based on this reply, appellant argues that the verdict was returned under a misapprehension of the law. The sole function of the jury was to determine the guilt or innocence of the defendant. without giving any consideration to the extent of punishment to be imposed. It is not to be presumed that the jurors violated their oaths by convicting the defendant, without sufficient proof of guilt, in the belief that he would receive a light sentence, or that they would have violated their oaths by voting for an acquittal, when satisfied of the defendant's guilt, because of the severity of punishment provided for the offense. Courts have frequently and properly refused to instruct juries as to the punishments which the law imposes for the commission of offenses being tried, and it would be anomalous to hold that a defendant is entitled to a reversal on the ground that jurors were mistaken as to the extent of punishment provided or the official whose duty it was to determine the same.

The judgment and the order are affirmed.

Hart, J., and Plummer, J., concurred.