## OWENS v. THE STATE.

On the trial of one charged with murdering his father, the killing being admitted and the plea of self-defense relied on, where the accused in his statement asserted that his mother had told him that the deceased had been abusive to her and threatened her life, evidence that the mother had herself threatened to have the deceased killed, not in his presence, was not admissible to rebut the assertion referred to ; and where such evidence was necessarily harmful to the accused, its admission will work a reversal of the judgment overruling the motion for a new trial.

Argued October 19, — Decided October 24, 1903.

Indictment for murder. Before Judge Littlejohn. Stewart superior court. July 1, 1903.

G. Y. Harrell, J. B. Hudson, and B. F. Harrell, for plaintiff in error. John C. Hart, attorney-general, and F. A. Hooper, solicitor-general, contra.

CANDLER, J. With one exception, we find no error in any of the rulings complained of in the motion for a new trial; but that exception, in our opinion, requires that the case be sent back for another hearing. The accused, with other members of his family, was indicted for the murder of his father. He admitted the killing, but claimed that it was done in self-defense, and denied that any one other than himself participated in the homicide. It was shown that several persons were present when the deceased was killed, and there was circumstantial evidence which would have warranted the jury in finding that more than one participated in the crime. There was, however, no evidence connecting the accused with any conspiracy to kill. In his statement the accused declared, among other things, that the deceased had been imposing upon his (the accused's) mother ever since he could recollect, and that she had complained of the abuse of the deceased and of his threats to kill her. On the other hand, evidence was admitted for the State to the effect that, prior to the killing, the wife of the deceased, who, as will have been seen, was the mother of the accused, had declared in the presence of the deceased that he ought to have his throat cut; that the deceased had said to the witness that she (his wife) was going to have him killed, and that she replied, " I did say so," and, " It ought to be done." The accused was not shown to have been present when this conversation took

48

place.   In regard to this evidence the court charged: " That testimony was offered by the State . . for the purpose of replying to the statement of the defendant in regard to certain alleged statements by the wife as to a certain alleged difficulty between her and her husband, . . and not as threats to be weighed against the defendant in this case, and not to be so weighed by the jury in passing upon his case."

We can not see that this evidence was admissible for any . purpose against the defendant on trial.   On the trial of the mother, who is jointly indicted with him, it is clearly admissible.   Its tendency could not fail to be prejudicial to the accused.   Evidence that the wife had used violent and, threatening language to her husband does not rebut the assertion that the husband, in his turn, had been brutal and abusive to her, and had threatened her life.   This is particularly so in the case under consideration, because the state of domestic warfare in which this family seems to have lived renders the two facts entirely consistent.   Furthermore, the accused in his statement did not say of his own knowledge that the deceased had ever threatened his wife, but merely that she had told him of such threats.   Certainly, evidence that she had threatened the deceased is not admissible to rebut the statement that the wife had, in a conversation with the accused, asserted the existence of a different state of facts.   As has been seen, there was no evidence of a conspiracy between the accused and his mother, and the trial court seems to have recognized that the threats of the mother would not be attributable to the accused as a co-conspirator. The defense of the accused was that he took his father's life while the latter was endeavoring to kill him.   The evidence improperly admitted would, if believed by the jury, tend to discredit this defense and lead them to believe that the accused was an assassin, procured by his mother to do a dastardly work of butchery.   The evidence was therefore necessarily harmful to him, and its admission must work a reversal of the judgment overruling the motion for a new trial.

*Judgment reversed.   All the Justices concur.*