[Crim. No. 487. Third Appellate District.—December 1, 1919.]

In the Matter of the Petition of KATHERINE B. TODD
for a Writ of Habeas Corpus on Behalf of WILLIAM
A. TODD.

[1] HABEAS CORPUS—COLLATERAL ATTACK UPON JUDGMENT—JURISDIC-
TION ALONE REVIEWABLE.—A proceeding on habeas corpus involves
a collateral attack upon the judgment in a criminal case, where
the prisoner thus seeks his release from personal restraint after
judgment of conviction and sentence, and the single question re-
viewable and determinable therein is one of jurisdiction.

[2] ID.—QUESTION OF JURISDICTION — JUDGMENT-ROLL ALONE TO BE
CONSIDERED.—In the determination in such case of the question
whether a judicial tribunal was without jurisdiction of the subject
matter of the proceeding thus sought to be reviewed or of the
person of the party whose liberty is under restraint by virtue of
such proceeding, or whether such tribunal, once having had it, had
for any legal reason lost jurisdiction to hear the proceeding or to
pass judgment therein, the court to which the application is made
is, with certain exceptions, limited solely to the consideration of
the judgment-roll or record of the action.

[3] ID.—SCOPE OF REVIEW—EXCEPTIONS.—The writ of habeas corpus
may not be so extended in its scope as to convert it practically
into a writ of error. A person, having been tried, convicted, and
sentenced, his right to be discharged from custody must appear
from or on the face of the judgment.

[4] ID.—DELAY IN BRINGING TO TRIAL—REMEDY OF DEFENDANT.—An
application for dismissal, based upon section 1382 of the Penal
Code, on the ground of not having been brought to trial within
sixty days after the filing of the information, must be made to
the court in which the information is pending.

[5] ID.—DENIAL OF MOTION TO DISMISS — HOW REVIEWABLE.—Where
the defendant moves to dismiss the information on the ground
that he was not brought to trial within sixty days after the filing
of the information, but such motion is denied, and thereafter he
is tried, convicted, and sentenced, his sole remedy is by appeal,
and if he takes an appeal and fails thereon to raise the point, he
will be deemed to have waived it, and will not be permitted to
raise it again in some other or collateral proceeding.

[6] ID.—NATURE OF RIGHT TO DISMISSAL—WAIVER.—The right to a
dismissal on the ground specified in section 1382, subdivision 2,
of the Penal Code, is merely a personal right or privilege accorded

4. Release of prisoner under writ of habeas corpus on account of
delay in prosecution, notes, 85 Am. St. Rep. 202; 56 L. R. A. 539.

to a defendant in a criminal case which he may or may not avail himself of the benefit of, according as he may elect.

[7] Id.—Time for Pronouncement of Judgment — Noncompliance with Law—Remedy.—Sections 1191 and 1202 of the Penal Code, prescribing the time within which judgment must be pronounced, are mandatory, but noncompliance with their provisions involves error of law, reviewable solely by appeal.

[8] Id.—Rape—Discrimination in Punishment—Constitutionality of Code Section.—Section 264 of the Penal Code, in denying to a party charged with rape upon a female under the age of sixteen years the right to have the jury determine, as in case of rape where the female is over the age of sixteen years and under the age of eighteen years, whether the punishment, in case of conviction, shall be in the county jail or state prison, is not violative of the first section of the fourteenth amendment of the federal constitution, which prohibits a state from making or enforcing any law denying to any person within its jurisdiction the equal protection of the laws.

PROCEEDING on Habeas Corpus to secure the release of a prisoner confined in the state prison. Writ discharged and prisoner remanded.

The facts are stated in the opinion of the court.

George D. Collins, Jr., for Petitioner.

U. S. Webb, Attorney-General, and J. Chas. Jones, Deputy Attorney-General, for Respondent.

HART, J.—On the thirteenth day of February, 1914, William A. Todd, in whose behalf a writ of *habeas corpus* is herein prayed for, was sentenced to a term of twenty-five years in the state prison at San Quentin upon a conviction of the crime of rape, alleged to have been committed in the county of Alameda on the twenty-fourth day of August, 1913, upon a female of the age of twelve years, not his wife.

The information charging said crime against the prisoner was founded on subdivision 1 of section 261 of the Penal Code. That section, in its entirety, reads:

"Rape is an act of sexual intercourse, accomplished with a female not the wife of the perpetrator, under either of the following circumstances:

"1. Where the female is under the age of eighteen years;

"2. Where she is incapable, through lunacy or other un-

soundness of mind, whether temporary or permanent, of giving legal consent;

"3. Where she resists, but her resistance is overcome by force or violence;

"4. Where she is prevented from resisting by threats of great and immediate bodily harm, accompanied by apparent power of execution, or by any intoxicating narcotic, or anesthetic, substance, administered by or with the privity of the accused;

"5. Where she is at the time unconscious of the nature of the act, and this is known to the accused;

"6. Where she submits under the belief that the person committing the act is her husband, and this belief is induced by any artifice, pretense, or concealment practiced by the accused, with intent to induce such belief."

Section 264 of the same code prescribes the punishment for the crime of rape and authorizes different penalties for said offense, such differentiation being based upon the distinction in the circumstances under which the crime may be committed. The section says:

"Rape is punishable by imprisonment in the state prison not more than fifty years, except where the offense is under subdivision 1 of section 261 of the Penal Code and the female is over the age of sixteen years and under the age of eighteen years, in which case the punishment shall be by imprisonment in the county jail for not more than one year or in the state prison for not more than fifty years, and in such case the jury shall determine by their verdict whether the punishment shall be by imprisonment in the county jail or in the state prison."

By the writ herein asked for the prisoner claims that he is entitled to his release from the custody of the state prison officials for these reasons, viz.: 1. That, in so far as it denies to a person convicted of rape under subdivision 1 of section 261 of the Penal Code the right to have it determined by the jury whether he shall be imprisoned in the county jail or in the state prison, section 264 is in conflict with the first section of the fourteenth amendment to the federal constitution and section 1977 of the Revised Statutes of the United States, [2 Fed. Stats. Ann., 2d ed., p. 126; U. S. Comp. Stats., sec. 3925], in that by said section 264 of our code he is denied "the equal protection of the laws"; 2. That the

superior court lost jurisdiction of the case by reason of the asserted fact that, in the absence of an application by him for a postponement, he was not brought to trial within sixty days after the filing of the information charging him with the offense for which he is now suffering imprisonment (Pen. Code, sec. 1382, subd. 2); 3. That the trial court, having failed to pronounce judgment of sentence within the time specified by section 1191 of the Penal Code, should have granted him a new trial, to which a convicted defendant is entitled in such case according to the mandatory terms of section 1202 of said code, it being further contended that the failure to grant him a new trial on said ground entitles him to be released from his restraint on *habeas corpus,* since, as counsel insists is true, the judgment under which he is undergoing punishment is absolutely void.

[1] A proceeding on *habeas corpus* involves a collateral attack upon the judgment in a criminal case, where the prisoner thus seeks his release from personal restraint after judgment of conviction and sentence, and the single question reviewable and determinable therein is one of jurisdiction. [2] Therefore, in the determination in such case of the question whether a judicial tribunal was without jurisdiction of the subject matter of the proceeding thus sought to be reviewed or of the person of the party whose liberty is under restraint by virtue of such proceeding, or whether such tribunal, once having it, had for any legal reason lost jurisdiction to hear the proceeding or to pass judgment therein, the court to which the application is addressed is, generally speaking, limited solely to the consideration of the judgment-roll, or, as our code defines it (Pen. Code, sec. 1207), "the record of the action." In saying "generally speaking," we have in mind some exceptions to the rule as it is above stated. Some of the exceptional instances in which the courts will, on *habeas corpus,* go beyond the face of the judgment to determine whether there is a want of jurisdiction to hear and determine the proceeding culminating in the judgment so challenged are referred to in Church on Habeas Corpus, second edition, sections 151 and 170. There are numerous decisions by the United States supreme court which point out and apply the exceptions. It is sufficient to examine herein one of those cases—*Matter of Neilson,* 131 U. S. 176, [33 L. Ed. 118, 9 Sup. Ct. Rep. 672, see,

also, Rose's U. S. Notes], cited by the petitioner here, where two different indictments were found against the appellant in the then territory of Utah, charging him with two different and distinct offenses, to wit: 1. That, for a certain specified period of time prior to the finding of the indictment, the appellant, contrary to the provisions of an act of Congress, did, in said territory, unlawfully claim, live, and cohabit with more than one woman as his wives; 2. That said Neilson (appellant there) did, on the fourteenth day of May, 1889, in the same territory, unlawfully and feloniously commit adultery with one Caroline Neilson (one of the alleged wives named in the first indictment), he being a married man and having a lawful wife, and not being married to said Caroline. To the first indictment, Neilson, on being arraigned, pleaded guilty, and was later sentenced to three months' imprisonment and to pay a fine. Upon his release he was arraigned upon the second indictment and pleaded not guilty thereto, and in addition to that plea, set up the plea of *autrefois convict*, in which he alleged the fact of his prior conviction or plea of guilty and in detail the facts in relation to that charge. The government demurred to the special plea of former conviction, the demurrer was sustained, and Neilson was tried, convicted, and sentenced under said second indictment. Neilson, having been thereupon delivered to the marshal, petitioned the court before which he was tried for a writ of *habeas corpus*, setting forth all the proceedings of the trial, including the first indictment, the facts upon which he based his plea of former conviction, under which he had suffered punishment, and claiming that the court had no jurisdiction to pass judgment against him upon more than one of the indictments, and that he was being punished twice for one and the same offense. The court, being of the opinion that if the petition for the writ were granted the petitioner would not be discharged from custody, disallowed the writ. An appeal was taken from said order, the United States statutes authorizing appeals from orders by territorial or inferior federal courts refusing to grant a writ of *habeas corpus*. The contention on appeal before the United States supreme court was that the judgment attacked was a regular judgment of conviction before a court of competent jurisdiction, having lawful jurisdiction of the subject matter and of the defendant, and that the question whether the

appellant's plea of *autrefois convict* was or was not good could not be inquired into in a collateral proceeding. The court held that, on *habeas corpus*, it was within the power of the court to examine the record of the case if it was necessary to do so to determine whether the prisoner was illegally restrained of his liberty. In that case it appeared from the record that the petitioner was twice convicted of and about to be made to suffer twice for the same offense. The facts appeared in the plea of former conviction by the petitioner as was also the demurrer to that plea, which was also a part of the record, and, of course, the averments of the plea were under the demurrer to be taken as true. The court in effect said that where upon *habeas corpus* facts appeared anywhere in the record showing that the prisoner was condemned without authority of law, the courts should look into the facts and discharge the prisoner if they were true upon their face. "It is difficult to see," declared the court, "why a conviction and punishment under an unconstitutional law is more violative of a person's constitutional rights than an unconstitutional conviction and punishment under a valid law." In that case the petitioner was asking for the preservation to him of a fundamental right, protected by a constitutional provision that no person's personal liberty shall twice be put in jeopardy or he be punished twice for the same offense. The situation there, as the court declared, did not present "a case of mere error in law, but a case of denying to a person a constitutional right."

We may add the suggestion that, under our state practice, the facts reviewed by the court in the Neilson case and upon which the prisoner was discharged, included one of the legally recognized pleas in criminal cases, and would be a part of the judgment-roll in the case, and, of course, it could be determined in such case from the judgment-roll itself whether the prisoner's constitutional right had been invaded by the second conviction and punishment. Parenthetically, we may observe that we have not taken the pains to learn what papers and documents constitute the judgment-roll in a criminal action under the federal practice. Nor is it necessary to the decision of the points urged for the release of the prisoner here that we should know. It is sufficient that we be convinced, as we are convinced, that, even though in a certain class of cases the supreme court of the

United States or the state courts will go behind the judgment to ascertain whether a citizen is suffering under restraint of his personal liberty through the invasion of some fundamental right guaranteed to him by the laws of the land, the case before us does not come within the class authorizing an investigation which will carry us beyond the judgment or the judgment-roll. [3] None of the courts, either federal or state, has ever held that the writ of *habeas corpus* may be so extended in its scope as to convert it practically into a writ of error. The prisoner here, having been tried, convicted, and sentenced, his right to be discharged from custody must appear from or on the face of the judgment. And his right to be discharged, we may say in the outset, is not made so to appear.

[4] Taking up for consideration first the point that the court which tried and pronounced judgment of sentence upon the prisoner lost jurisdiction of the case because he was not brought to trial within sixty days after the information upon which he was tried and convicted was filed, a sufficient answer thereto is that there is no proper showing here that the petitioner made an application to the court in which the information was pending and his trial was had for a dismissal of the action upon the ground stated. (*Ex parte Fennessy*, 54 Cal. 101.) Section 1382 of the Penal Code provides that the court, unless good cause to the contrary is shown, must order the prosecution to be dismissed "if a defendant, whose trial has not been postponed upon his application, is not brought to trial within sixty days after the finding of the indictment, or filing of the information." As is said in *Ex parte Fennessy, supra:* "It is manifest that the prisoner must first resort to the court where the prosecution is pending. When he shall do so, that court will determine whether 'good cause' exists for his detention; otherwise it will permit him to depart." From anything that is disclosed to us here, we cannot tell whether the petitioner objected to going to trial on the ground that jurisdiction in the trial court to try him had been lost by reason of his not having been brought to trial within the sixty days' limitation. [5] But there is even another and a conclusive answer to the point under consideration, and that is that the prisoner having been tried, convicted, and sentenced, his sole remedy lay in an appeal, assuming that

he moved to dismiss the prosecution in the court below, the motion being denied. As stated, the point involves an error of law reviewable on appeal, and the right to raise the point in the trial court may be waived, although it involves a jurisdictional question which undoubtedly may be inquired into before his trial in a proceeding upon *habeas corpus* or perhaps in a proceeding to prevent the court from proceeding with the trial on the ground that it had lost jurisdiction to try the accused for the reason stated, or maybe by mandate to compel the court to dismiss the action. But, where a defendant has made his motion to dismiss the prosecution on the ground specified in section 1382, subdivision 2, of the Penal Code, and the same has been denied and he has thereafter been tried, convicted, and sentenced, his sole remedy then is by way of appeal, and if he takes an appeal and fails thereon to raise the point, he will be deemed to have waived it and will not be permitted to raise it again in some other or collateral proceeding. Of course, it is not to be understood by these observations that we mean or intend to hold that there are not questions of jurisdiction which may not be inquired into and determined at any time and in any proceeding appropriate to the testing of such questions; but, as we have said, the right to raise the question of jurisdiction now being considered is one that may be waived by the defendant. [6] And it is not so much in such a case a waiver of jurisdiction as a waiver of the right to raise the question, for the right, like the defense of the statute of limitations in civil cases, involves merely a personal privilege or right accorded to a defendant in a criminal case which he may or may not avail himself of the benefit of, according as he may elect.

The third point in the order in which the points are above stated we will next consider. It involves the claim that the court, having lost jurisdiction to pass judgment of sentence upon the prisoner because such judgment was not pronounced within the time prescribed by section 1191 of the Penal Code, should have granted him a new trial under the provisions of section 1202 of said code. Section 1191 provides: "After a plea or verdict of guilty, or after a verdict against the defendant on a plea of former conviction or acquittal, or once in jeopardy, the court must appoint a time for pronouncing judgment which must not be less than two,

nor more than five days after the verdict or plea of guilty; provided, however, that the court may extend the time not more than ten days for the purpose of hearing or determining any motion for a new trial, or in arrest of judgment; and provided, further, that the court may extend the time not more than twenty days in any case where the question of probation is considered in accordance with section 1203 of this code, provided, however, that upon the request of the defendant such time may be further extended not more than ninety days additional. . . . ''

Section 1202 of the Penal Code reads as follows: ''If no sufficient cause is alleged or appears to the court at the time fixed for pronouncing judgment, as provided in section eleven hundred and ninety-one of this code, why judgment should not be pronounced, it must thereupon be rendered; and if not rendered or pronounced within the time so fixed or to which it is continued under the provisions of section eleven hundred and ninety-one of this code, then the defendant shall be entitled to a new trial. If the court shall refuse to hear a defendant's motion for a new trial or when made shall neglect to determine such motion within the time fixed for pronouncing judgment, or within the time to which the same is continued under the provisions of section eleven hundred and ninety-one of this code then the defendant shall be entitled to a new trial.''

[7] Both the above sections have been held to be mandatory. But noncompliance with their provisions involves error of law, reviewable solely by appeal. In the first place, it is to be observed that, even if the point were reviewable on *habeas corpus,* there is no record before us in this proceeding showing that any objection was made by the prisoner to the pronouncement of judgment of sentence on the ground set forth in section 1202 of the Penal Code, or, if such point was raised, that the court was deprived of jurisdiction to pass sentence. All we know about the matter is what we glean from the petition for this writ, and it is therein merely stated that the verdict against the prisoner was rendered on the sixteenth day of April, 1914, but that he was not sentenced until the twenty-fifth day of April, 1914, more than five days after the rendition of the verdict; ''that no order of said superior court was made or entered in said

action continuing the matter of said sentence to the said twenty-fifth day of April, 1914, nor extending the time for sentence to said date.'' The last allegation we do not understand, unless it is thereby meant that an order extending the time for passing sentence was not entered in the minutes of the court. It is not material, though, whether the order was so entered or not. We must assume, in this proceeding, that there was an order postponing the matter of the pronouncement of sentence to the date mentioned. At any rate, there is no proper showing here that the postponement was not made for the purpose of considering a motion for a new trial or the question of probation. But an irrefutable answer to the point is, as stated above, that it is not reviewable in a proceeding on *habeas corpus*. The provision of section 1202 is, as will be noticed, that if the court fails to pass sentence within any of the times mentioned in section 1191, then, in that event, the defendant is entitled to a new trial. This is as much as he is entitled to in such case, and it can be awarded to him only as the statute very clearly implies that it may be done. The writ of *habeas corpus* is most certainly not the proper remedy in such case, because there is in such a proceeding no power in the court to grant the defendant a new trial. The writ prayed for here proceeds upon the hypothesis that the party asking for it is unlawfully restrained of his personal liberty, and, if found to be illegally held in the custody of the law, he must be discharged. If, after his conviction of a crime, he be granted a new trial for some legal reason, he is not entitled by reason thereof to be freed from the charge of which he was convicted. The law is in such case still authorized to hold him until he is duly or in the regular way acquitted of the charge, or the prosecution be dismissed.

[8] We now come to the proposition that section 264 of the Penal Code, in denying to a party charged with the crime of rape upon a female under the age of sixteen years the right to have the jury determine, as in cases of rape, where the female is over the age of sixteen years and under the age of eighteen years, whether the punishment, in case of conviction, shall be in the county jail or state prison, is violative of the first section of the fourteenth amendment of the federal constitution, prohibiting any state from

making or enforcing any law denying to any person within its jurisdiction the equal protection of the laws.

There is nothing in section 264 of the Penal Code which offends the amendment of the federal constitution above mentioned. Section 264, although not accomplishing the purpose by express language, practically divides the crime of rape, for the purpose of punishment, into two classes, founded in a distinction inhering in the different circumstances under which the act of rape may be committed. In the first is embraced the crime of rape committed under the circumstances indicated in subdivisions 2, 3, 4, 5, and 6 of section 261 and the crime committed under subdivision 1, where it is committed on a female under the age of sixteen years, and for the crime committed under any of those circumstances, the legislature has, by section 264 of the Penal Code, itself fixed the maximum term up to which the court, or, as now, the prison directors in cases of felonies, may measure out the punishment, thus leaving, formerly to the courts, but now to the directors, a wide discretion in determining, upon the circumstances of the particular case, what punishment would be just and proper. The evident theory upon which the legislature has vested in the jury the right, where the crime of rape is committed upon a female between the ages of sixteen and eighteen years, to determine whether the imprisonment shall be in the county jail or the state prison, and denies that right to the jury in other cases of rape as defined by section 261 of the Penal Code, is, as suggested, that there is a wide difference in the character of the varying circumstances under which the crime may be committed. When the crime is committed under the circumstances indicated in the subdivisions above named and upon a female under the age of sixteen years, the act is then inherently characterized by circumstances of the most shocking fiendishness and wickedness. The circumstances themselves in cases of rape as defined in said subdivisions, or in the case of a female under sixteen years of age, furnish a general standard by which the sentencing board may be so governed in fixing the punishment as to do it wisely and justly in each particular case. In the second class—that is, where the crime is committed upon a female between the ages of sixteen and eighteen years—the legisla-

ture has committed to the jury the right to determine whether the punishment shall be in the county jail or in the state prison, leaving to the sentencing board the right, as exercisable by it in all other felony cases, to determine the extent of the punishment which should be imposed. It will require but little reflection to perceive the reason prompting the legislature in thus making, as to the mode and the extent of the punishment and leaving it to the jury to determine the mode in the one class, a distinction between those cases where the female is under the ages of sixteen and eighteen years and those where the female is under the age of sixteen years or arise under the subdivisions of section 264 other than subdivision 1. As we have pointed out, and, as is obviously true, the manner in which, or the means by which, the crime of rape, as defined by subdivisions 2, 3, 4, 5, and 6, is perpetrated upon a female itself stamps the crime as one of the most atrocious character. It may be that the discrimination in its application to cases arising under the first subdivision of section 261 may, on first blush, appear to be arbitrary. But this is not so. A female under the age of sixteen years is still a mere infant. The average child of that age is without that mature judgment and that experience in the common affairs of life to enable it to form a proper conception of the significance or scope of acts or deeds, whether of a moral or immoral character. A child under that age is, as a rule, without that strength of will or volition which is ordinarily the product of developed and matured judgment, and the average female child under that age, although probably having a general but vague or unsettled notion that acts of illicit intercourse are wrongful, is incapable of forming a proper degree of appreciation of the appalling consequences entailed upon her and her future life by the commission of such acts by or upon her. Hence, she is the more likely than one her senior in years and experience to yield to the artful machinations of a licentious male and so become an easy victim of his treachery and his lechery. In such a case the law wisely declares that legally the female shall be held to be incapable of giving her consent to such acts, and this is upon the theory that she is not competent, by reason of her immature years, to form a correct appreciation of the inherent atrocity of such acts and the terrible consequences inevitably following therefrom to her.

On the other hand, a female who has advanced beyond the age of sixteen years, or is in near approach to that of eighteen years, may justly be supposed to have acquired a broader experience and developed a more mature judgment and, therefore, possessed of greater strength of self-will or volition. To her, therefore, may justly be imputed powers fully to know and appreciate the intrinsic wrongfulness of illicit sexual relations between the sexes. And, in those cases, too, the legislature has said that the female cannot legally give her consent to such act; but this is due more to a policy which the legislature designed to establish in such cases that no female under the age of eighteen years should be subjected to temptations by the licentious which, if yielded to, would cause her to depart from the path of virtue or righteousness. When, therefore, actual consent is given to the commission of such acts by a female between the ages of sixteen and eighteen years—an age at which it may justly be assumed that she has developed such judgment and acquired such experience as will enable her fully to understand and know the wrongfulness and sinfulness of such illicit acts and likewise to realize the pernicious consequences which must follow to a young woman committing them—it must then be assumed that such consent was given by her with a full knowledge of their wrongfulness and a like appreciation of their effect upon her character and life. And it is often true that such acts are committed with the actual consent of the female or even, either in subtle ways or openly and without reserve, invited by her. All these considerations the legislature undoubtedly took into account in providing in section 264 of the Penal Code a ground for discriminating in the matter of the mode and the extent of the punishment and leaving it to the jury to determine the mode in certain cases arising under the first subdivision of section 261, finding, from common experience, as we may assume, that in cases of rape upon females between the ages of sixteen and eighteen years the act might be perpetrated with the actual consent of the female under circumstances which should go in mitigation of the punishment, a question which it was eminently proper and wise to commit to the determination of the jury upon the circumstances of the case, and that in the case of the commission of such an act upon or with a female under the age of sixteen years, whether with or without her

actual consent, there could be found no possible ground for excuse for the act or any possible circumstances extenuating in any degree the crime, since, as above pointed out, such a female is a mere child and the perpetration of such an act upon her involves a fiendish imposition upon childish innocence—upon one, in other words, without the ability or judgment to see that the inevitable tendency of such practices by a female of her years is to lead to a life of unutterable depravity, sinfulness, and misery.

Thus viewing section 264 of the Penal Code, it is plainly manifest that it in no way impinges upon or opposes the fourteenth amendment to the federal constitution. The distinction is not an arbitrary one, but is founded in a classification intrinsically or naturally arising from the varying circumstances under which the crime of rape may be committed. The provision giving the jury the right to determine the mode of punishment or the question whether the punishment shall be in the county jail or state prison applies alike to all of a class established upon circumstances which may arise in such a case and which cannot arise either in any of the cases of rape under the other subdivisions of section 261 or in the case of the commission of the crime upon and with a female under the age of sixteen years. The case of the prisoner here does not come within that provision of the code. He does not belong to the class to which the provision alone applies, and he was tried and sentenced just as any other person must be who is charged with committing rape upon a female under the age of sixteen years.

It will not, of course, be denied that it is within the power of the legislature to fix the penalty for a crime according to its inherent nature, or the nature of the circumstances under which it may be committed. "There can be no doubt," says Mr. Justice Lennon, in *Selowsky* v. *Superior Court*, 180 Cal. 404, [181 Pac. 652], "that the legislature has power to classify with respect to the penalty to be imposed not only upon the basis of the inherent nature of the offense but also upon the basis of the nature of the circumstances attending the commission of the offense considered in their relation to the public welfare." (See *People* v. *Finley*, 153 Cal. 59, [94 Pac. 248]; *People* v. *Carson*, 155 Cal. 164, [99 Pac. 970]; *People* v. *Barbieri*, 33 Cal. App. 770, [166 Pac. 812]; *People* v. *Casa*, 35 Cal. App. 194, [169

Pac. 454]; *Ex parte Selowsky,* 38 Cal. App. 569, [177 Pac. 301].)

We have now considered all the points urged against the legal integrity of the judgment under which the prisoner here is suffering imprisonment, and, as is manifest from the foregoing discussion, have found in them no merit or force.

The writ is discharged and the prisoner remanded.

. _Ellison, P. J., *pro tem.,* and Burnett, J., concurred. .