[Crim. No. 895.  Third Appellate District.—July 14, 1926.]

## THE PEOPLE, Respondent, v. LOUIE RAMBAUD, Appellant.

[1] CRIMINAL LAW—JURIES AND JURORS—CHALLENGES—APPEAL.—An erroneous disallowance of a challenge for cause is not prejudicial, even though the defendant finally exhausted his peremptory challenges, if it does not appear that he had occasion to or desired to use an additional peremptory challenge, or that the jurors

---

1. See 8 Cal. Jur. 610; 16 R. C. L. 291.

finally accepted were not entirely satisfactory to him, but to warrant a reversal it must appear that an objectionable juror was forced upon the defendant and that he in some manner expressed his dissatisfaction with the jury as completed.

[2] ID.—PEREMPTORY CHALLENGES—IRREGULARITY IN MANNER OF EXERCISE.—The mere fact that, after the defendant had exhausted all of his peremptory challenges, the trial court permitted the prosecution to exercise peremptory challenges upon two veniremen, who had theretofore been passed for cause, and after the prosecution had declined to exercise, in turn, its peremptory challenges, in violation of section 1088 of the Penal Code, is not prejudicial error, where it does not appear that any objectionable juror was forced upon the defendant.

[3] ID.—SECTION 1088, PENAL CODE—PROCEDURE—SECTION 4½, ARTICLE VI, CONSTITUTION—APPEAL.—The procedure set forth in section 1088 of the Penal Code should be followed by the trial court, but a departure therefrom cannot be held sufficient cause for the reversal of a judgment, unless it appears further that the defendant had suffered the loss of a substantial right, justifying an appellate court under section 4½ of article VI of the constitution in holding that such departure has resulted in a miscarriage of justice.

[4] ID. — RAPE — HUSBAND AND WIFE — MARRIAGE — EVIDENCE. — In a prosecution for rape under subdivision 1 of section 261 of the Penal Code, statements made by defendant and admitted in evidence that he was going away with the prosecutrix to get married and that the purpose of their trip was to go to some place and get married, were sufficient to show that the prosecutrix was not his wife.

[5] ID.—ACT AMENDING SECTION 264, PENAL CODE—SUFFICIENCY OF TITLE—CONSTITUTIONAL LAW.—The act of 1923 entitled "An act to amend section 264 of the Penal Code relating to the punishment of the crime of rape," is sufficient as to its title under section 24 of article IV of the constitution.

[6] ID.—TITLE OF ACT — SUBJECT MATTER — CONSTITUTIONAL LAW.— Section 264 of the Penal Code, as amended by the act of May 8, 1923 (Stats. 1923, p. 271), providing that rape is punishable by imprisonment in the state prison not more than fifty years, except where committed on a female under the age of eighteen years, with her consent, under subdivision one of section 261 of the Penal Code, in which case the jury shall recommend punishment by imprisonment in the county jail or state prison, provided that when the defendant pleads guilty the trial court shall have

---

3. See 15 Cal. Jur. 438; 16 R. C. L. 248.
5. See 23 Cal. Jur. 660.

the discretion to fix the punishment, embraces but one subject expressed in its· title, within the meaning of section 24 of article IV of the constitution.

[7] ID.—DESIGNATION OF PLACE OF PUNISHMENT—POWER OF JURY UN-DER SECTION 264, PENAL CODE—AUTHORITY OF COURT.—Under section 264 of the Penal Code, as amended in 1923 (Stats. 1923, p. 271), which provides that rape is punishable by imprisonment in the state prison not more than fifty years, except where committed on a female under the age of eighteen years, with her consent, under subdivision one of section 261 of the Penal Code, in which case the jury shall recommend punishment by imprisonment in the county jail or state prison, the jury is vested with authority to designate the place of punishment, and where the jury recommends the punishment at confinement in the county jail, the trial court is not authorized to send the defendant to a state prison.

[8] ID.—PLEA OF GUILTY—PUNISHMENT—AMENDMENT OF 1923 TO SEC-TION 264, PENAL CODE—CONSTRUCTION.—The legislature had the right when enacting the 1923 amendment to section 264 of the Penal Code (Stats. 1923, p. 271) to eliminate the words "over the age of 16 years" from said section, as amended in 1913 (Stats. 1913, p. 213), which provided that when the offense is under subdivision one of section 261 of the Penal Code and the female is "over the age of 16 years and under the age of 18 years," the jury could fix the punishment by confinement in county jail or state prison; and the proviso contained in said section 264, as amended in 1923, to the effect that, where the defendant pleads guilty to the offense of rape under said sub-division 1 of section 261, the punishment shall be either imprisonment in the county jail or state prison, at the discretion of the trial court, did not take away from the jury any powers it had theretofore exercised, but merely conferred upon the trial court powers which were not expressly included within the language of the section as worded by the amendment of 1913.

[9] ID. — SECTION 264, PENAL CODE — CONSTRUCTION — CONSTITUTIONAL LAW.—Section 264 of the Penal Code, as amended in 1923 (Stats. 1923, p. 271), which provides that rape is punishable by confine-ment in state prison, except when ·committed on a female under eighteen years of age without force the jury shall recommend the place of imprisonment in the county jail or in a state prison, provided that when defendant pleads guilty the trial court shall fix the punishment, does not violate section 25 of article IV of the constitution, relating to special legislation.

[10] ID.—VERDICT—PLACE OF IMPRISONMENT—ERRONEOUS SENTENCE.—In a prosecution for rape under subdivision 1 of section 261 of the Penal Code, where the jury found the defendant guilty

and recommended that he be punished by imprisonment in the county jail, under section 264 of the Penal Code, as amended in 1923, the trial court erred in disregarding the verdict of the jury and sentencing defendant to a state prison.

---

(1) 17 C. J., p. 294, n. 58.   (2) 17 C. J., p. 292, n. 35.   (3) 17 C. J., p. 368, n. 5.   (4) 33 Cyc., p. 1488, n. 31.   (5) 36 Cyc., p. 1035, n. 52.   (6) 36 Cyc., p. 1025, n. 8.   (7, 8) 33 Cyc., p. 1518, n. 4. (9) 36 Cyc., p. 1015, n. 68.   (10) 17 C. J., p. 356, n. 28.

APPEAL from a judgment of the Superior Court of San Joaquin County. C. W. Miller, Judge. Sentence set aside and cause remanded for resentence.

The facts are stated in the opinion of the court.

Langdon & Dexter for Appellant.

U. S. Webb, Attorney-General, and J. Charles Jones, Deputy Attorney-General, for Respondent.

PLUMMER, J.—The defendant was tried and convicted of the crime of rape on an information charging said offense under subdivision 1 of section 261 of the Penal Code and appeals from the judgment.

Upon this appeal the defendant assigns the following grounds for reversal: 1. That the court erred in refusing to allow the defendant's challenge for cause in two instances; 2. That the court permitted the People to exercise peremptory challenges and excuse two prospective jurors after the defendant had exhausted his peremptory challenges; 3. That there is no evidence showing that Jennie Jackson, the rapee mentioned in the information, was not the wife of the defendant; and 4. That the court erred in refusing to follow the recommendations of the jury that the defendant be punished by confinement in the county jail and in sending the defendant to a state prison, notwithstanding the verdict of the jury.

[1] The record shows that upon *voir dire* examination two of the veniremen were challenged for cause by the defendant, that these challenges were denied by the court, and that thereafter the defendant excused both of the challenged veniremen by exercising his peremptory chal-

lenges. The record further shows that the defendant exhausted all of his peremptory challenges, but the record nowhere shows that any venireman was allowed to remain upon the panel and was sworn as a juror who had been challenged for cause or against whom the defendant had intimated the slightest objection. So far as the record shows, every one of the twelve jurors finally sworn to try the cause against the defendant was wholly and entirely acceptable, free from bias and properly qualified to try the cause. Our attention has not been called to any objection urged by the defendant, or anything in the record whatever, intimating that the twelve jurors sworn to try the cause were not entirely satisfactory to the defendant. The only statement of counsel for the defendant in this particular is: "Our challenges are exhausted."

This situation does not present any reversible error. Whether the trial court should or should not have allowed the challenges for cause is wholly immaterial. The objectionable jurors were not sworn to try the case and the defendant had just what he was entitled to, to wit: the judgment of twelve fully qualified jurors. While some of the earlier cases announce the rule that a disallowed challenge for cause will be considered upon appeal, under the circumstances here presented, all the later decisions and the ones which announce the correct rule, hold against the appellant's contention. In 8 Cal. Jur., page 610, we find the following: "The rule, as laid down in the later cases, is that an erroneous disallowance of a challenge for cause is not prejudicial, even though the defendant finally exhausted his peremptory challenges, if it does not appear that he had occasion to or desired to use an additional peremptory challenge, or that the jurors finally accepted were not entirely satisfactory to him. In the earlier cases there is authority to the contrary. To warrant a reversal it must appear that an objectionable juror was forced upon the defendant and that he in some appropriate manner expressed his dissatisfaction with the jury as completed." See other cases there cited.

In *People* v. *Schafer*, 161 Cal. 573 [119 Pac. 920], the supreme court, in considering this question, says: "It is a rule of paramount importance that errors committed in

overruling challenges for cause are not grounds of reversal, unless it be shown an objectionable juror was forced upon the challenging party after he had exhausted his peremptory challenges; if his peremptory challenges remain unexhausted, so that he might have excluded the objectionable juror by that means he has no ground of complaint,'' and then adds further: ''but the fact that he does exhaust them does not preclude the application of the rule above quoted.''

As was said in many of the cases, the important thing to be considered is whether the objectionable juror was forced upon the defendant and whether he had that to which he was entitled, a fair and impartial jury and not a jury composed of any particular individuals. (*People* v. *Johnson,* 57 Cal. App. 391 [207 Pac. 281]; *People* v. *Kromphold,* 172 Cal. 512 [157 Pac. 599]; *People* v. *Schafer,* 161 Cal. 573 [119 Pac. 920]; *People* v. *Troutman,* 187 Cal. 313 [201 Pac. 928].) Other cases might be cited to the same effect, but the list would only encumber the record.

[2] After the defendant had exhausted all of his peremptory challenges, the court permitted the prosecution to exercise peremptory challenges upon two veniremen who had theretofore been passed for cause, and after the prosecution had declined to exercise, in turn, its peremptory challenges, as set forth in section 1088 of the Penal Code, which specifies ''first the people and then the defendant, may take a peremptory challenge unless the parties' peremptory challenges are exhausted; and each party shall be entitled to have the panel full before exercising any peremptory challenges.'' Here again we are confronted with the situation previously considered. It does not appear that any objectionable juror was forced upon the defendant. Not the slightest intimation appears in the record of any dissatisfaction whatever relative to the jurors who were sworn to try the cause in the places of the persons just referred to. Under such circumstances, we think that section 1404 of the Penal Code applies, which reads: ''Neither a departure from the form or mode prescribed by this code in respect to any pleading or proceeding, nor an error or mistake therein, renders it invalid, unless it has actually prejudiced the defendant, or tended to his prejudice, in respect to a substantial right.'' In *People* v. *Majors,* 65 Cal.

138 [52 Am. Rep. 295, 3 Pac. 597, 605], we find the follow-
ing on pages 148 and 149: "In the case of *People* v. *Mc-
Carty,* 48 Cal. 557, it was held 'that if the prosecution in a
criminal case pass the jury to the defendant, who declines
to make any challenge, the prosecution may then inter-
pose a peremptory challenge to a juror before he is sworn.'
It is true the foregoing case differs slightly from this, in-
asmuch as in that case the defendant did not interpose any
challenge, whereas, in this case, he did; but we do not think
that the difference between the facts of the two cases in
any manner affects the principle applicable to both. It
is there said that the prosecution had not accepted the jury
by only passing them to the other side.

"At most, the action of the court was an irregularity, not
affecting, so far as we can see, any substantial right of the
defendant, and one which does not call for a reversal of the
judgment."

In that case a challenge was allowed to be exercised by
the prosecution after it had previously passed the jury.

In 15 Cal. Jur., page 438, section 108, the procedure in
exercising challenges is thus set forth: "In criminal cases
'if all challenges [for cause] on both sides are disallowed,
either party, first the people and then the defendant, may
take a peremptory challenge unless the parties' peremptory
challenges are exhausted.' Failure to comply with · this
provision does not invalidate a judgment but at most
amounts to a mere irregularity. Thus if after all challenges
for cause are disallowed, the prosecution passes the jury or
a juror to the defendant, it may then interpose a peremptory
challenge to a juror before he is sworn. Even if such
procedure is an irregularity cognizable upon appeal, the
defendant may not complain unless he exhausts all of his
peremptory challenges."

The last sentence of the quotation from California Juris-
prudence is not, however, a complete statement of the law.
It is true that a defendant is not in a position to complain
until he has exhausted all of his peremptory challenges,
but it is not true that this alone is a good ground of com-
plaint. Under such circumstances, the defendant is simply
in a position where he has a right to complain, if any ob-
jectionable juror has in this manner been placed upon the

panel and it is incumbent upon the defendant to show that such is the case. The mere fact that some other juror is placed upon the panel by reason of the exercise of a challenge out of order by the prosecution is not, in and of itself, a showing of prejudicial error. For all that appears in this case, the juror placed upon the panel was just as acceptable to the defendant and as free from bias or prejudice as was any juryman so displaced. The order of selecting a juror is a matter of procedure and section 4½ of article VI of the state constitution specifies that no error as to any matter of procedure shall be held sufficient to set aside a verdict or order a new trial, unless it appears from the record that the error complained of has caused a miscarriage of justice. [3] While it may be said that the procedure set forth in section 1088 of the Penal Code should be followed by the trial court, a departure therefrom cannot be held sufficient cause for the reversal of a judgment, unless it appears further that the defendant has suffered the loss of a substantial right, justifying an appellate court under the constitutional provision quoted in holding that such departure has resulted in a miscarriage of justice. The following cases are in line with the holding here had: *People* v. *Troutman,* 187 Cal. 313 [201 Pac. 928] ; *People* v. *Schafer,* 161 Cal. 573 [119 Pac. 920] ; *People* v. *Durrant,* 116 Cal. 179 [48 Pac. 75] ; and *People* v. *Kromphold,* 172 Cal. 512 [157 Pac. 599].

[4] In arguing that the record does not show that the girl was not the wife of the defendant, the portion of the transcript wherein the statements made by the defendant admitted in evidence that he was going away with the girl to get married and that the purpose of their trip was to go to some place and get married must not have been fully considered. The statement of the defendant read into the record was that he was single and that he intended to marry the girl when he reached Bakersfield, all of which testimony was proper to be considered by the jury in determining the fact of whether the defendant and the girl in question were not husband and wife as fully and completely to all intents and purposes as though the defendant had said the girl was not his wife or the girl had said the defendant was not her husband.

The refusal of the trial court to follow the verdict of the jury presents a question not hitherto directly passed upon.

Prior to the amendment, approved May 19, 1913 [Stats. 1913, p. 213], section 264 of the Penal Code read, simply that rape was punishable by imprisonment in the state prison for not less than five years. By the amendment approved, as above stated, the section was changed to read that rape is punishable by imprisonment in the state prison not more than fifty years, except where the offense is under subdivision one of section 261 of the Penal Code and the female is over the age of sixteen years and under the age of eighteen years, in which case the punishment shall be by imprisonment in the county jail for not more than one year or in the state prison for not more than fifty years, and in such case, the jury shall determine by their verdict whether the punishment shall be by imprisonment in the county jail or in the state prison. In 1923, by an act approved on May 8th of that year [Stats. 1923, p. 271], section 264 of the Penal Code was amended to read as follows: "Rape is punishable in the state prison not more than fifty years, except where the offense is under subdivision one of section two hundred sixty-one of the Penal Code, in which case the punishment shall be either by imprisonment in the county jail for not more than one year or in the state prison for not more than fifty years, and in such case the jury shall recommend by their verdict whether the punishment shall be by imprisonment in the county jail or in the state prison; provided, that when the defendant pleads guilty of an offense under subdivision one of section 261 of the Penal Code the punishment shall be in the discretion of trial court, either by imprisonment in the county jail for not more than one year or in the state prison for not more than fifty years."

In drafting the amendment, approved in 1923, the words "the jury shall determine by their verdict" as they appeared in the section as amended by the act of 1913 were changed to read, "the jury shall recommend by their verdict." The act of 1913 was silent as to what should be done by the court in prosecutions founded upon subdivision one of section 261 of the Penal Code, in the event that the defendant pleaded guilty. This apparent omission was supplied by the amendment of the section in 1923 and reads as follows: "provided, that when the defendant pleads guilty of an offense under subdivision one of section 261 of the Penal

Code the punishment shall be in the discretion of the trial court, either by imprisonment in the county jail for not more than one year or in the state prison for not more than fifty years.''

[5] It is argued by counsel for the People that the act approved by the legislature in 1923 purporting to amend section 264 of the Penal Code is unconstitutional in that it conflicts with section 24 of article IV of the constitution setting forth what shall be embraced in the title of every act and that every act shall embrace but one subject. The title of the act approved May 8, 1923, is in the following words: ''An act to amend Section 264 of the Penal Code relating to the punishment of the crime of rape.'' A reference to the act approved May 19, 1913, wherein the jury is first given the right to designate the place of punishment where the prosecution is based upon subdivision one of section 261 of the Penal Code, discloses a title in identical words. It thus follows that if the amendment of section 264 passed by the legislature in 1923 is invalid for the reasons argued, then, and in that case, the same section, as amended in 1913, is also invalid. It may first be observed that section 261 of the Penal Code divides the crime of rape into degrees in so far as it may be said that the codes anywhere designate the different degrees of the crime of rape. In section 261, *supra,* six different situations or conditions are set forth in defining the offense, only one of which, to wit, the first subdivision, where the female is under eighteen years of age and no force is used, presents a possible situation where circumstances may be presented lessening the apparent heinousness of the offense. The Penal Code does not, in terms, anywhere purport to divide the offense of rape into degrees. It simply sets forth, as said, six sets of conditions or circumstances under which the offense may be committed and then follows with section 264, naming penalties and providing for cases where the act of the defendant may not be so reprehensible as to necessitate or warrant his being confined in the state prison or that the safeguarding of society does not necessitate that form of punishment. The legislature, by the act of 1913, limited the period when such possible conditions might exist and be considered to instances where the female was over the age of sixteen and under the age of eighteen years. The amendment to the section of

1923 cuts out the words "sixteen years" and leaves section 264 of the Penal Code operative in all cases where the prosecution is based upon subdivision one, section 261, *supra*. For the reasons hereinafter about to be given, we do not think it necessary to review the cases cited by respondent upon the theory that section 264 of the Penal Code, as amended in 1923, is unconstitutional. The cases cited are applicable to particular facts and circumstances there presented. The cases which are controlling here are the ones which relate to the amendments of particular code sections. The text found in 23 Cal. Jur. 660 sets forth the rule controlling in this state. It is there said: "An act to amend a provision of the codes is sufficient, so far as title is concerned, if it is entitled merely as an act to amend a certain numbered section of a named code. If such title omits to name the code, though specifying a section number, it is sufficient, but if it adds further descriptive words, the title is not vitiated thereby unless such further words indicate a subject not related to the matters covered by the body of the bill. The almost universal custom of the legislature in making amendments to the codes has been to put into the title of the amendatory act, after the number of the section amended and the name of the code, additional words expressing the subject of the act; and it is settled that such an amendatory act complies with the constitutional requirements. The title of an act to amend one of the codes by adding a new section may or may not state the number of the new section, but it must contain words expressing the subject to which the proposed legislation relates. An act entitled an act to add a new section to a named code, relating to a named subject, is sufficient to embrace all matters relating to such subject. Where a statute is entitled as an act to amend a certain section of a named code and to provide for a given object, the title expresses a single subject."

As illustrating the rule set forth, we cite the case of *Deyoe* v. *Superior Court,* 140 Cal. 476 [98 Am. St. Rep. 73, 74 Pac. 28], where the title of an act adding new sections to the code reading as follows: "Relating to Actions for Divorce," was held sufficient. In *People* v. *Parvin,* 74 Cal. 549 [16 Pac. 490], the title of the act under consideration read, "An act to amend section 3481 of the Political Code." Such title was held sufficient. To the same

effect are the case of *Beach* v. *Von Detten,* 139 Cal. 462
[73 Pac. 187], and *People* v. *Oates,* 142 Cal. 12 [75 Pac.
337]. In the case of *Elder* v. *Edwards,* 34 Utah, 13 [95
Pac. 367], the supreme court of Utah, discussing a similar
provision in the constitution of that state, quotes with ap-
proval the following language: "It is held by the great
majority of cases that it is sufficient for the title of an act
to amend a Code or Revision to specify the section to be
amended, without giving the title of the chapter or division
to which it belongs or in any way indicating the subject
matter of the section. Under such a title any legislation
is proper which is germane to the section specified." We
do not need to go so far in upholding the title in the case
under consideration for the simple reason that the title
does indicate the subject matter being considered as well
as the section of the code to be amended. Other cases
might be cited, but what we have said is sufficient to show
that the title employed by the legislature in amending sec-
tion 264 of the Penal Code in 1923 is amply sufficient.

[6] That section 264 of the Penal Code, as amended in
1913, under a title identical with that employed by the
legislature in the amendment adopted in 1923 is constitu-
tional has been expressly adjudicated by this court in the
case of *In re Todd,* 44 Cal. App. 496 [186 Pac. 790]. This
court, after upholding the constitutionality of the section,
as it then stood, speaking through Justice Hart, used the
following language: "It will not, of course, be denied that
it is within the power of the legislature to fix the penalty
for a crime according to its inherent nature, or the nature
of the circumstances under which it may be committed,
'There can be no doubt,' says Mr. Justice Lennon, in *Se-
lowsky* v. *Superior Court,* 180 Cal. 404 [181 Pac. 652],
'that the legislature has power to classify with respect to
the penalty to be imposed not only upon the basis of the
inherent nature of the offense but also upon the basis of
the nature of the circumstances attending the commission
of the offense considered in their relation to the public wel-
fare,'" citing a number of cases. Nor do we think that
the section is vulnerable on the theory that more than one
subject matter is contained in the section and not ex-
pressed in the title. The only subject matter dealt with

is punishment for the crime of rape. It is not even dealing expressly with degrees of crime. When the word "punishment" is used in the title every member of the legislature has his attention directed to the subject matter of the punishment to be imposed for the crime of rape, which includes all the elements that may enter into the question of making the punishment fit the offense committed. By way of illustration in showing that the title with respect to section 264 of the Penal Code follows the rule heretofore adopted and may be more or less considered as a legislative interpretation of the constitutional provision which we are considering, we may refer to the titles used by the same legislature in amending other sections of the Penal Code, to wit: Page 270 of the Statutes of 1923, the title of the amending section relating to burglary reads as follows: "An act to amend Section 461 of the Penal Code, relating to the penalty for burglary." Three degrees of punishment are set forth in the section under the title which we have quoted. Page 271 of the Statutes of 1923, in amending section 213, relating to the punishment of robbery, we find the following title: "An act to amend section two hundred and thirteen of the Penal Code, relating to the punishment of robbery." Under this caption or title, a section is added permitting the punishment for robbery for not less than five years to life and, also, under other circumstances, for not less than one year. Again, section 487 of the Penal Code, Statutes of 1923, page 271, is amended under the following title: "An act to amend section four hundred eighty-seven of the Penal Code, relating to grand larceny." The section then sets forth three sets of conditions or circumstances under which grand larceny may be committed. We think the rule is too well settled, both by the adjudications of our own court and the practice of the legislature that a title such as was used by the legislature in 1923 amending section 264 of the Penal Code is sufficient, to permit of any other ruling than we have indicated, whether correct or incorrect in the first instance. Any other ruling would invalidate almost every section of the Penal Code.

[7, 8] In the case of *People* v. *Davis*, 67 Cal. App. 210 [227 Pac. 494], this court in considering incidentally the interpretation of section 264 of the Penal Code, as amended

by the legislature in 1923, said: ''The evident intention of the legislature was to correct the omission in the section as it originally stood, to empower the court upon plea of guilty to exercise the discretion which had theretofore been vested in the jury upon trial, when the female outraged was between the ages of sixteen and eighteen years, but, the unhappy wording of the section makes the amendment apply in all cases coming under subdivision 1 of section 261 of the Penal Code, when the female is under the age of eighteen years.'' While the use of this language was not absolutely necessary to the decision of the Davis case, it does indicate our views of what the legislature intended by the added words incorporated in section 264 by the amendment of 1923. A consideration of these words is absolutely necessary in order to determine what the legislature intended. Prior to the amendment of 1923 the section simply permitted the fixing of the punishment either in the county jail or a state prison by the jury upon trial. No such discretion was by the wording of the section permitted to be exercised by the court. We know as a matter of fact this authority or discretion was exercised by courts upon the entry of a plea of guilty upon a charge founded on subdivision one of section 261 of the Penal Code, but it was not by virtue of any direct provision of the Penal Code but was only upon the assumed inherent power of the court. To supply this omission or defect in the language of the section, there was added the proviso which we have set forth that when the defendant pleads guilty of an offense under subdivision one of section 261 of the Penal Code, the punishment shall be in the discretion of the trial court. It will thus be seen that the legislature intended the punishment to be in the trial court only in one instance, that is, upon a plea of guilty. In cases where the cause went to trial the place of punishment was designated by the jury and now when he does not go to trial, but pleads guilty, the discretion as to the place of punishment is centered in the court. When the defendant is sent to the state penitentiary in either case, neither the jury nor the court fix the extent of punishment. If the words ''and in such case the jury shall recommend by their verdict whether the punishment shall be by impris-

onment in the county jail or the state prison'' have no
mandatory effect, then the proviso that in a certain speci-
fied case, and only in a certain specified case, the discre-
tion as to the place of punishment shall be exercised by
the court is wholly meaningless. If it was intended by
the legislature that the court should fix the place of pun-
ishment in all cases, it would not have so worded the sec-
tion that the discretion as to the place of punishment
should be exercised by the court only when the defendant
pleaded guilty. If the section as amended does not vest
in the jury power to designate the place of punishment,
then the language of the section does not vest such author-
ity anywhere in the event that the defendant goes to trial,
and we are forced to the rather anomalous conclusion that
the legislature in giving discretion to the court to fix the
place of punishment, when a plea of guilty is entered,
has provided that more favorable consideration may be
given a defendant even when the lack of a tenable defense
induces the entry of such plea. This certainly was not the
intention of the legislature, as common experience teaches
that pleas of guilty are not ordinarily entered in cases
where defense is humanly possible. When read as a whole,
we think the section means just as we have interpreted it.
That the legislature has the power to authorize the jury
to fix the place of punishment as well as the court cannot
be doubted. Nor is the argument tenable that because the
jury may not fix an adequate punishment, the court is
therefore authorized, under the section, to disregard the
action of the jury. To hold that the recommendation pro-
vided for in the section is of no validity because the jury
may make a mistake as to the place where the defendant
should be sent, would be to hold that the court ought not
to be allowed to exercise like authority, because the trial
court might also fall into error, might be either too severe
or too lenient. That is a matter exclusively for the legis-
lature. The legislature has seen fit to eliminate these
words ''over the age of sixteen years,'' allowing the dis-
cretion to be exercised where the female has consented, ir-
respective of age, so long as she is under eighteen years.

We said in the case of *People* v. *Davis, supra,* that this
wording was ''unhappy.'' However, the legislature has

the exclusive power over these matters and had a right to eliminate the words which we now find omitted, irrespective of whether courts deem such acts wise or unwise. It is simply a question of power and not of wisdom. Our attention has been called to the cases of *Guthrie* v. *State,* 125 Ga. 291 [54 S. E. 180], *Mack* v. *State,* 118 Ga. 753, 45 S. E. 603], and *Coney* v. *State,* 101 Ga. 582 [28 S. E. 918], where recommendations in the verdict of the jury have been held of no binding force or effect upon the court. A reference to section 1062 (marginal number section 1036, parenthetical number of the Penal Code of Georgia) having to do with the subject of recommendations by a verdict upon which the foregoing cases were founded, contains the following: "When such recommendation is approved by the presiding judge or the trial court said crime shall be punished as a misdemeanor. If the judge trying the case sees proper, he may in his discretion, reduce such felonies to misdemeanors." These are the concluding words of the section and, of course, take away the idea of vesting in the jury authority to designate the place of punishment, or enforce any views which they may express concerning the mitigation thereof. Likewise, the case of *State* v. *Evans,* 159 La. 712 [106 South. 123], and *Leach* v. *State,* 99 Tenn. 584 [42 S. W. 195], are founded upon statutes which expressly state that the court may or may not adopt the recommendations of the jury. Again, in *Lewis* v. *State,* 51 Ala. 1, where the code of the state provided that any person, who is guilty of murder in the second degree must, on conviction, be imprisoned in the penitentiary, or sentenced to hard labor for the county, for not less than ten years, at the discretion of the jury," a verdict which read, "We, the jury, find the defendant guilty of murder in the second degree, and recommend his sentence to the penitentiary for twenty years," sufficiently complied with the statute, as the word "recommend," under such circumstances, was held as sufficiently indicating the exercise of discretion by the jury in fixing the period of imprisonment. That the word "recommend" in its ordinary meaning is not synonymous with the word "determine" may be admitted, but the whole wording of section 264 of the Penal Code, we think, leads unmistakably to the conclusion that the legislature did not intend

to take away from the jury any powers it had theretofore exercised, but only intended to confer upon the court powers which were not expressly included within the language of the section as worded by the amendment of 1913 and that it was intended that the court was to designate the place of punishment only in the instance mentioned and expressly provided for. It is not for us to say that a jury would be less wise in its action than the court. That, again, is exclusively within the province of the legislature.

[9] The case of *In re Todd,* 44 Cal. App. 496 [186 Pac. 790], and the case of *Selowsky* v. *Superior Court,* 180 Cal. 404 [181 Pac. 652], and the cases there cited sufficiently answer the contention that section 264 of the Penal Code, as amended, is violative of section 25 of article IV of the constitution, relating to special legislation. It is there shown that such contention is not tenable.

[10] It necessarily follows from what has been said that the court erred in pronouncing sentence. The verdict was in the following language: "We, the jury in the above entitled cause, find the defendant, Louie Rambaud, guilty of the crime of rape, as charged, and recommend that he be punished by imprisonment in the county jail," which authorized the court to sentence the defendant to the designated place. This necessitates, however, only a modification of the judgment. It is therefore ordered that the sentence be set aside and the cause remanded to' the trial court, with directions to resentence the defendant to the county jail of San Joaquin. County for a period not exceeding that provided in the code.

Needham, J., *pro tem.,* and Finch, P. J., concurred.

A petition by respondent to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on September 7, 1926.